**FROZEN FOOD EXPRESS, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 9250.**

United States District Court
N. D. Texas,
Dallas Division.
July 8, 1963.

Phinney, Hallman & Pulley and Wm. E. Livingstone, III, Dallas, Tex., for plaintiff.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Barefoot Sanders, U. S. Atty., Dallas, Tex., for defendant, United States.

Robert W. Ginnane, Gen. Counsel, and Betty Jo Christian, Atty., Interstate Commerce Commission, Washington, D. C., for defendant, Interstate Commerce Commission.

Before JOHN R. BROWN, Circuit Judge, and T. WHITFIELD DAVIDSON and LEO BREWSTER, District Judges.

BREWSTER, District Judge.

The plaintiff seeks by this action to set aside and annul orders of the Interstate Commerce Commission dated December 29, 1961 and June 29, 1962, respectively, in its Docket No. MC–108207 (Sub-No. 60), Frozen Food Express Common Carrier "Grandfather" Application.

The order of December 29, 1961 granted in part and denied in other parts the plaintiff's application for "grandfather" authority filed under the provisions of the Transportation Act of 1958. The order of June 29, 1962, by Division 1 of the Commission acting as an Appellate Division, denied the applicant's petition for reconsideration of the order of December 29, 1961.

This Court has jurisdiction of the subject matter and of the parties. 49 U.S.C.A. §§ 305(g) and (h); 28 U.S.C.A. §§ 1336, 1398, and 2321 to 2325. A three-judge district court is required under 28 U.S.C.A. § 2284.

It is conceded that during the "grandfather" period the plaintiff was in bona fide operation as an irregular route motor common carrier in interstate commerce of some of the commodities which were exempt from regulation by the Commission prior to the passage of the Transportation Act of 1958. The question here is whether the Commission's limitations, territorywise and commoditywise, on the authority actually granted denied the plaintiff that "substantial parity between future operations and prior bona fide operations" contemplated by the "grandfather" clause of the Act.

The plaintiff's position here is that the record shows affirmatively that the Commission acted arbitrarily and erroneously by failing to consider proper standards, by applying improper standards, and by improperly applying recognized legal standards. Its alternate position is that it is impossible to say from the findings and conclusions of the Commission that it arrived at its order only by the proper application of legal standards. For support of its contentions, the plaintiff relies upon one or more of the following actions of the Commission:

1. Its ruling that plaintiff's operations prior to January 1, 1957 were too remote to have any bearing on the question of bona fide operations during the critical period.

2. Its failure to consider holding out and active solicitation by the plaintiff during the critical period, including the time prior to January 1, 1957.

3. Its action in determining authority to be granted based solely upon predominance of movement or numerical calculations.

4. Its ruling that frozen fruits, frozen berries and frozen vegetables were separate classes of commodities, rather than one class made up of the three.

The defendants claim in their brief that the order of the Commission is based upon adequate findings, supported by substantial evidence of record, and in accord with applicable law.

The success of the plaintiff's complaint here depends upon the extent to which we agree with the Commission's views on the four particulars listed above.

The plaintiff's application for "grandfather" authority was made necessary by the Transportation Act of 1958 which brought under the regulatory power of the Commission eleven listed commodities, including frozen fruits, frozen berries, frozen vegetables, and bananas, which had theretofore been exempt. 49 U.S.C.A. § 303(b) (6) [1] and (c) [2].

---

1. "(b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (6) motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation: Provided, That the words 'property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof)' as used herein shall include property shown as 'Exempt' in the 'Commodity List' incorporated in ruling numbered 107, March 19, 1958, Bureau of Motor Carriers, Interstate Commerce Commission, but shall not include property shown therein as

2. See Note 2 on Page 134.

Theretofore, the above mentioned commodities had been exempt under Administrative Ruling No. 107,[3] issued by the Commission in clarification of Sec. 203(b) (6) of the Interstate Commerce Act (49 U.S.C.A. § 303(b) (6), before 1958 amendment).

The critical date under the "grandfather" clause was May 1, 1958. For a considerable period beginning prior to that date, the plaintiff had been operating as a motor carrier under numerous grants of authority from the Commission entitling it to transport over a wide area covering many states certain non-exempt frozen foods and other foods requiring temperature control. It serviced that territory with a large fleet of motor vehicles equipped with mechanical refrigeration. During the "grandfather" period, the plaintiff also transported as exempt commodities frozen fruits, frozen berries, frozen vegetables and bananas between points in many states.

Within due time, the plaintiff filed its application with the Commission for authority under the "grandfather" clause to transport frozen fruits, frozen berries, frozen vegetables, bananas, and other commodities in a twenty-two state area. The application was protested by competing motor carriers and by rail carriers.

After hearing on the application before a Commission examiner in October, 1960, the examiner filed his report recommending that authority be granted the plaintiff to transport (1) frozen fruits, frozen berries and frozen vegetables from all points in California and Michigan and from Searcy, Ark., and Wichita, Kan., to all points in the numerous states named, and (2) bananas from Galveston, Texas, and New Orleans, La., to all points in the several states named, all over irregular routes.[4]

'Not exempt': Provided, further, however, That notwithstanding the preceding proviso the words 'property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof)' shall not be deemed to include frozen fruits, frozen berries, frozen vegetables, cocoa beans, coffee beans, tea, bananas, or hemp, and wool imported from any foreign country, wool tops and noils, or wool waste (carded, spun, woven, or knitted), and shall be deemed to include cooked or uncooked (including breaded) fish or shell fish when frozen or fresh (but not including fish and shell fish which have been treated for preserving, such as canned, smoked, pickled, spiced, corned or kippered products); * * *."

2. "(c) Except as provided in section 302 (c) of this title, subsection (b) of this section, in the exception in subsection (a) (14) of this section, and in the second proviso in section 306 (a) (1) of this title, no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, on any public highway or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such person a certificate or a permit issued by the Commission authorizing such transportation, nor shall any person engaged in any other business enterprise transport property by motor vehicle in interstate or foreign commerce for business purposes unless such transportation is within the scope, and in furtherance, of a primary business enterprise (other than transportation) of such person. * * *"

3. "Nothing in this part except the provisions of section 204 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation: * * *"

4. "The examiner finds that applicant on May 1, 1958 was in bona fide operation, in interstate or foreign commerce, as a common carrier by motor vehicle (1) of frozen fruits, frozen berries, and frozen vegetables (a) from points in California to points in New Mexico, Arizona, Indiana, Ohio, Minnesota, Wisconsin, Arkansas, Oklahoma, Illinois, Missouri, Kansas, Nebraska, and Tennessee, (b) from points in Michigan to points in California, Kansas, Minnesota, and Nebraska, (c) from

The portion of the application which was denied related to commodities which are immaterial to this case.

A further hearing before a Commission examiner on applicant's petition to re-open resulted in no change requiring discussion here.

The plaintiff was satisfied with the authority recommended by the Commission examiner, and therefore filed no exceptions to the report and recommended order. It contended before the Commission, and it contends here, that such authority represents that which should rightfully be granted it under the "grandfather" clause. However, some of the protestants filed exceptions and a hearing on them was held before Division 1 of the Commission. On December 29, 1961, that Division issued its report and order substantially narrowing, by a two to one vote, the scope of authority both as to territory and as to commodity recommended by the examiner.[5]

Generally stated, the main differences between the authority recommended by the examiner and that granted by the Commission were:

(a) *Commodity.* The effect of the examiner's report was to treat frozen fruits, frozen berries and frozen vegetables as one class, and to permit transportation of all of them between the points named. The Commission treated each of those commodities as a separate class, and in some instances denied authority as to one of them while granting it as to one or both of the others.

(b) *Territory.* In some instances, the Commission eliminated all points in destination states recommended by the examiner; and in others, it limited the destinations to particular cities in named states, where the examiner had recommended all points therein.

Commissioner Webb dissented in part on the following ground:

"In my opinion, applicant is entitled to receive considerably broader territorial authority than that granted by the report."

Wichita, Kans., to points in Arizona, Illinois, Minnesota, Tennessee, Nebraska, and Oklahoma, and (d) from Searcy, Ark., to points in California and Ohio, and (2) of bananas (a) from Galveston, Tex., to points in Iowa, Ohio, Missouri, Kentucky, Nebraska, Wisconsin, and Michigan, and (b) from New Orleans, La., to points in Missouri, Illinois, Kansas, Indiana, Texas, and Oklahoma, all over irregular routes, and has so operated since that time; that applicant is entitled to a certificate authorizing continuance of such operation; and that the application in all other respects should be denied."

5. "We find that applicant was, on May 1, 1958, in bona fide operation, in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular routes, of (1) frozen fruits, frozen berries, and frozen vegetables from points in California to Little Rock, Ark., Chicago, Ill., Omaha, Nebr., points in Oklahoma, and points in Kansas on and east of U. S. Highway 81, (2) frozen vegetables and frozen berries from points in California to points in Arizona, (3) frozen fruits and frozen berries from points in California to Kansas City, Mo., (4) frozen fruits, (a) from points in California to Phoenix, Ariz., and St. Joseph, Mo., and (b) from points in Mich-

igan to Kansas City, Kans., Minneapolis, Minn., and Omaha, Nebr., (5) frozen vegetables (a) from points in California to Champaign, Ill., Yorktown, Ind., Albuquerque, N. Mex., Memphis, Tenn., and points in Missouri, (b) from Wichita, Kans., to Chicago, Ill., Minneapolis, Minn., Omaha, Nebr., and points in Oklahoma, and (c) from Searcy, Ark., to Los Angeles, Calif., and (6) bananas (a) from New Orleans, La., to Chicago, Ill., Terre Haute, Ind., Coffeyville and Pittsburg, Kans., Oklahoma City, Okla., points in Texas on and east of U. S. Highway 281, and points in Missouri, and (b) from Galveston, Tex., to points in Iowa, Pittsburg and Wichita, Kans., Grand Rapids, Mich., Springfield, Mo., Omaha Nebr., and Eau Claire, Wis., and (7) frozen fish, flowers, and frozen poultry, when moving in the same vehicle and at the same time with frozen fruits, frozen berries, and frozen vegetables, from points in California to Phoenix, Ariz., and points in Texas; and has so operated since that time; that an appropriate certificate authorizing the continuance of such operations should be granted, subject to the condition that the authority set forth above and that now held by applicant to the extent they duplicate shall not be construed as to confer more than one operating right; and that the application in all other respects should be denied."

The plaintiff's only complaint on petition for reconsideration was about the fact that the order of the Commission had materially reduced the scope of authority recommended by the examiner. Reconsideration was denied and the present court action was duly filed.

At the outset, we recognize that court review of an order of the Interstate Commerce Commission is subject to certain definite limitations, including the following:

■ Such an order is presumed to be valid, and the party attacking it has the burden of showing invalidity. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 512, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Baltimore & Ohio R. R. v. United States, 298 U.S. 349, 358, 56 S.Ct. 797, 80 L.Ed. 1209 (1936).

■ An order of the Commission supported by substantial evidence may not be modified or set aside if it is based on adequate findings and is arrived at by proper application of legal standards. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942); Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147 (1939); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934). In the last cited case, the Court said at pp. 286–287 of 292 U.S. p. 694 of 54 S.Ct.:

"* * * The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by an administrative body. * * *"

■ Findings and conclusions of the Commission may not be disturbed where only a question of the weight of the evidence is involved. United States v. Carolina Freight Carrier Corp., supra, from which the following is quoted:

"* * * That involved weighing of specific evidence in light of the complexities of this transportation service. The judgment required is highly expert. Only where the error is patent may we say that the Com-

mission transgressed. * * *" 315 U.S., at 482, 62 S.Ct., at 726.

"* * * We would not disturb those conclusions if only a question as to the weight of the evidence was involved. * * *" 315 U.S., at 482–483, 62 S.Ct., at 726–727.

The above restrictions are applicable to "grandfather" proceedings. United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 86 L.Ed. 1162 (1931); United States v. Carolina Freight Carriers Corp., supra.

■ While there are these limitations on the scope of judicial review, the courts are still charged with a serious responsibility of seeing that the orders of the Commission are reached by application of recognized legal standards. The Supreme Court, in United States v. Carolina Freight Carriers Corp., supra, at p. 489 of 315 U.S., p. 729 of 62 S.Ct., said of that duty:

"* * * Congress has made a grant of rights to carriers such as appellee. Congress has prescribed statutory standards pursuant to which those rights are to be determined. Neither the Court nor the Commission is warranted in departing from those standards because of any doubts which may exist as to the wisdom of following the court which Congress has chosen. Congress has also provided for judicial review as an additional assurance that its policies be executed. That review certainly entails an inquiry as to whether the Commission has employed those statutory standards. If that inquiry is halted at the threshold by reason of the fact that it is impossible to say whether or not those standards have been applied, then that review has indeed become a perfunctory process. If, as seems likely here, an erroneous statutory construction lies hidden in vague findings, then statutory rights will be whittled away. An insistence upon the findings which Congress has made basic and essential to the Commission's action is no intrusion into the administrative domain. It is no

more and no less than an insistence upon the observance of those standards which Congress has made 'prerequisite to the operation of its statutory command.' Opp Cotton Mills, Inc. v. Administrator, 312 U.S. 126, 144 [61 S.Ct. 524, 85 L.Ed. 624]."

The Court's duty here, under the principles announced in the cases above cited, is to determine only whether the particular findings and rulings of the Commission relied upon by the plaintiff, which are listed in the first part of this opinion, either show affirmatively that the Commission's order was not the result of proper application of all the pertinent legal standards, or make it impossible to say that those standards were properly applied.

The questions of whether the Commission improperly refused to consider evidence of plaintiff's operations prior to January 1, 1957, and its holding out and solicitations during the entire critical period will be considered together. The record clearly shows that the Commission regarded each of such matters to be an improper standard to take into consideration in determining the extent of plaintiff's bona fide "grandfather" operations.

The Commission's order of December 29, 1961, states: "Shipments transported prior to January 1, 1957 are too remote from the statutory date of May 1, 1958, to establish bona fide operations  *  *."

During the hearing before the Commission examiner, the applicant offered evidence of holding out and solicitation.

It was rejected on the grounds that it was not "relevant and material", or "pertinent", or "important".[6]

We are of the opinion that the Commission improperly refused to consider evidence of plaintiff's operations prior to 1957, and of its holding out and solicitation during the "grandfather" period.

The Supreme Court, in United States v. Carolina Freight Carriers, Corp., supra, at p. 481 of 315 U.S., p. 726 of 62 S.Ct., said of the "grandfather" clause of the Motor Carrier Act of 1935: "As we indicated in Alton R. Co. v. United States, supra, the purpose of the 'grandfather clause' was to assure those to whom Congress had extended its benefits a 'substantial parity between future operations and prior bona fide operations.'" See also Alton R. Co. v. United States, 315 U.S. 15, 22, 62 S.Ct. 432, 86 L.Ed. 586 (1942), and Winter Garden Company v. United States, D.C., 211 F.Supp. 280, 291, by three-judge court, Eastern District of Tennessee.

Mr. Justice Jackson, in his dissenting opinion in the Carolina Freight Carriers Corp. case, expressed the same thought about that "grandfather" clause in the following language: "In trying to limit the injury caused by transition from a purely private enterprise to a regulated public service industry, the general plan was to preserve to private owners the transportation values evidenced by actual conditions of operation on June 1, 1935, and to exempt them from meeting the requirements of 'public convenience and

---

6. "Mr. White: I object, Mr. examiner, I think we are getting into the realm of a holding out.

"Examiner Cave: I will sustain the objection. I don't think it is important.

"Mr. Hallman: Mr. examiner, I have one case in mind where the comment was made on the holding out and I don't propose to go into it in detail; but I do propose or will try to develop something of the holding out and solicitation of this carrier in connection with this traffic in support of the shipments which have actually been handled.

"Examiner Care: Well, I don't think its pertinent. In view of the objection, I have sustained the objection.

"Mr. Hallman: All right, sir.

"Q. (by Mr. Hallman): Mr. Weller, how does your company hold itself out insofar as solicitation of business is concerned with reference to whether or not your services are offered to particular cities, particular states or particular areas of the country which you serve?

"Mr. White: Same objection. I really don't have any objection to this getting into the record, but I do think I ought to note an objection.

"Mr. Joyce: I join in that.

"Mr. White: We feel it is not relevant and material.

"Examiner Cave: Sustained."

necessity' as to such operation. * * * " (315 U.S. p. 493, 62 S.Ct. p. 731).

That the carrier's operations during the "grandfather" period must be viewed as a whole in arriving at the nature and extent of its bona fide operations is shown by the following statement from United States v. Carolina Freight Carriers Corp., supra, at pp. 483–484 of 315 U.S., p. 727 of 62 S.Ct.:

" * * * *The Commission may not atomize his prior service, product by product, so as to restrict the scope of his operations,* where there is substantial evidence in addition to his holding out that he was in 'bona fide operation' as a 'common carrier' of a large group of commodities or of a whole class or classes of property. There might be substantial evidence of such an undertaking though the evidence as to any one article was not substantial. The broad sweep of his prior service may indeed have made the carriage of any one commodity irregular and infrequent. Yet, *viewed as a whole rather than as a group of separate and unrelated items, his prior activities may satisfy the test of 'bona fide operation'* as a 'common carrier' within the scope of his holding out. * * * " (Emphasis ours).

It is impossible to see how the plaintiff's operations in connection with frozen fruits, frozen berries, frozen vegetables and bananas could have been fairly viewed as a whole without considering its operations prior to January 1, 1957. It appears from the brief of the defendant that that date was one arbitrarily selected by the Commission for determining remoteness of all the eleven items covered by Sec. 203(b) (6) of the Transportation Act of 1958, 49 U.S.C.A. § 303(b) (6). Such an action could not have given due consideration to the variable characteristics of the eleven commodities, some of which had nothing in common. Frozen fruits, frozen berries, frozen vegetables and bananas were subject to all the unpredictable factors that affect crops. Winter Garden Company v. United States, supra, at pp. 286, 287–288 of 211 F.Supp., said under circumstances similar to those here?

"The traffic available to plaintiffs is limited to frozen fruits, berries and vegetables. These items are perishable, seasonal and are greatly dependent upon weather, crop and market conditions. * * * "

"Plaintiffs submitted proof of operation during 1956, 1957, 1958 and 1959 to show the points served and changes in nature of traffic. The Commission limited the evidence to shipments hauled in 1957, 1958 and 1959.

" 'We have not listed in the appendixes any shipments handled in 1956, because such shipments are too remote with respect to the statutory date to have probative value in this proceeding. See Refrigerated Dispatch Common Carrier Application, 83 M.C.C. 411.' (Commission's Report, Footnote 6, p. 351.)

"The changing and unpredictable nature of the traffic which were characteristics of this industry made consideration of the 1956 shipments crucial. The record reveals that the bulk of the traffic in frozen vegetables, berries and fruits moves after May 1 of each year, mainly during the summer and early fall. The elimination of 1956 shipments restricted plaintiffs to proof of only one principal movement prior to May 1, 1958. The Commission required proof of operations between the same points at least once before and once after May 1, 1958 and by not considering the 1956 shipments, plaintiffs were denied their statutory right to prove that the origin and destination points in their bona fide operations change from year to year; that these changes occur frequently and that such changes are attributable to the special characteristics of the traffic."

The practical effect of the remoteness date set by the Commission was to limit the proof of plaintiff's operations prior to May 1, 1958 to one crop season. When

the nature of the crops here involved is considered, that short period could hardly have been a fair test of the true scope of plaintiff's operations. The plaintiff should have been given an opportunity to show the nature and extent of its operations for a sufficient period prior to 1957 to prevent any distortion of the true pattern of its activities due to a variance in seasons and in the other factors that affect crops of the kind here involved.

▆ While we realize that "a holding out to serve a specified area is not alone sufficient" (United States v. Carolina Freight Carriers Corp., supra, at p. 480 of 315 U.S., p. 725 of 62 S.Ct.), we do not agree with the viewpoint that plaintiff's holding out and solicitation during the "grandfather" period were irrelevant, immaterial, impertinent or unimportant factors in determining the nature and extent of its bona fide operations.

The very definition of "common carrier by motor vehicle" in the Interstate Commerce Act, 49 U.S.C.A. § 303(a) (14), contemplates that holding out is a proper standard to consider:

"The term 'common carrier by motor vehicle' means *any person which holds itself out to the general public* to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes, except transportation of motor vehicle by an express company to the extent that such transportation has heretofore been subject to chapter 1 of this title, to which extent such transportation shall continue to be considered to be and shall be regulated as transportation subject to chapter 1 of this title." (Emphasis ours).

United States v. Carolina Freight Carriers Corp., supra, recognizes that holding out and solicitations in connection with actual service are proper matters to be considered in cases of this kind. We regard as particularly applicable here the quotation previously taken from that case beginning with the statement, "The Com-

mission may not atomize his prior service," and concluding with, "Yet, viewed as a whole rather than as a group of separate and unrelated items, his prior activities may satisfy the test of 'bona fide operation' as a 'common carrier' *within the scope of his holding out.'*" (Emphasis ours). That case further says in discussing a "grandfather" application at p. 486 of 315 U.S., p. 728 of 62 S.Ct., that, "The fact that a particular commodity has never been transported between certain points in that territory would not mean that authority to haul it between them should be withheld." The Court further said on pp. 487–488 of 315 U.S., pp. 728–729 of 62 S.Ct.:

"* * * So far as southbound shipments are concerned, it is plain that a wide variety of articles was transported consistently with appellee's holding out that it would carry any of the articles from any of the points. Appellee's 'bona fide operation' may possibly be limited only to those articles actually carried. But *where it was actively soliciting whatever it could get* at any of the points, it does violence to its common carrier status to make the origin or destination of future shipments conform to the precise pattern of the old. *Such a pulverization of the prior course of conduct changes its basic characteristics.* There is no statutory sanction for such a procedure." (Emphasis ours).

The effect of refusal to consider proper holding out and solicitation by carriers in connection with actual service during the "grandfather" period would be to "freeze them into the precise pattern of their prior activities" and thereby to "alter materially the basic characteristics of their service." United States v. Carolina Freight Carriers Corp., supra, at p. 488 of 315 U.S., p. 729 of 62 S.Ct.

Alton R. Co. v. United States, supra, and Winter Garden Company v. United States, supra, also support the rule that proper holding out and solicitation are standards that should be considered in hearings on "grandfather" applications.

■ The defendants claim that the point about holding out and solicitation should not be considered because the plaintiff waived its right to complain of the rejection of the evidence by failing to carry forward an exception to the ruling of the examiner that the evidence was inadmissible. They also say that there was some evidence of that nature in the record without objection. While we do not have properly before us the question of the admissibility of the evidence actually rejected, we are entitled to and do consider such action and the remarks in connection therewith as an indication that holding out and solicitation were not regarded as proper factors to be considered in determining the issue of bona fide operations.

■ It is our conclusion that both operations prior to January 1, 1957, and holding out and solicitation during the entire "grandfather" period, were proper standards the Commission was required to consider in determining the question of bona fide operations. The failure to consider either one of them alone was enough to invalidate the Commission's order.

The plaintiff also contends that the Commission acted incorrectly in determining the authority to be granted on the sole basis on predominance of movement and numerical calculations. This point is so closely related to the one just discussed about the failure to consider holding out and solicitation that our ruling on that question will take care of this one. Under this opinion, the Commission will be required to consider proper holding out and solicitation along with service actually rendered.

The plaintiff's remaining claim is that frozen fruits, frozen berries and frozen vegetables should have been treated as one class of commodity as a matter of law. It cites Winter Garden Company v. United States, supra, in support of its contention. As we construe that decision, it holds that under the *proof* in that record, the three commodities in question were one class. The result was reached as a finding on a fact issue, rather than as a matter of law. While the language of the Act may not foreclose a fact issue on this matter, there is nothing in such language indicating that these commodities *must* be treated as one class. The Winter Garden case is distinguishable on the ground that there is no proof in this case raising any fact issue on this question. But, as there could be a relationship between this aspect and the holding out and solicitation problems, we think it should be open for proof and further consideration on remand.

Judgment will be entered setting aside the Commission's orders in question, enjoining the enforcement thereof, and remanding this case to the Commission for further proceedings consistent with this opinion.

We refrain from expressing any opinion as to the extent of the authority which should be granted the plaintiff under its "grandfather" application. That is a matter to be decided by the Commission by proper application of all the pertinent legal standards. It must determine the scope of the certificate to which plaintiff is entitled.