The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

**WILLIS SHAW FROZEN EXPRESS, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 1918.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

May 31, 1966.

---

**52.** United States v. Tateo, 214 F.Supp. 560, 567 (S.D.N.Y.1963).

**53.** See Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

A. Alvis Layne, Nancy Pyeatt, Washington, D. C., John H. Joyce, Fayetteville, Ark., for plaintiff.

Donald G. Turner, Asst. Atty. Gen., Dept. of Justice, John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Charles M. Conway, U. S. Atty., Fort Smith, Ark., Robert W. Ginnane, General Counsel, ICC, Fritz R. Kahn, Associate Gen. Counsel, ICC, Washington, D. C., for defendants.

Before MEHAFFY, Circuit Judge, and MILLER and HENLEY, District Judges.

## OPINION

JOHN E. MILLER, District Judge.

In this action commenced July 6, 1965, the plaintiff, Willis Shaw Frozen Express, Inc., seeks to suspend and set aside orders of the Interstate Commerce Commission of February 2, 1965, and June 3, 1965. The instant action is a continuation of protracted litigation between the plaintiff and the ICC which has lasted almost eight years. This court has jurisdiction of the subject matter and of the parties under 49 U.S.C.A. Sec. 17(9), 305(g); 28 U.S.C.A., Secs. 1336, 1398, 2321, 2325, 2284.

On December 5, 1958, plaintiff, sometimes referred to as Shaw or applicant, filed with the ICC an application for a certificate under Sections 7(b) and 7(c) of the Transportation Act of 1958, 49 U.S.C.A. Sec. 303(b) (6). The plaintiff

sought authority to operate as a common carrier in the interstate transportation of frozen fruits, frozen berries and frozen vegetables from and to points within 35 states. The defendants' hearing examiner, on May 4, 1961, found and recommended that the plaintiff be given a certificate authorizing the transportation in interstate commerce as a common carrier of frozen fruits, frozen berries and frozen vegetables into only a portion of the territory described in the application and recommended that authority be granted in the following geographical areas only:

*"Findings*

"The examiner finds that on May 1, 1958, applicant was in bona fide operation, in interstate or foreign commerce, as a common carrier by motor vehicle, (a) of frozen fruits, frozen berries, and frozen vegetables, (1) from Burley, Caldwell, and Nampa, Idaho, and points in California, Oregon, and Washington, to Denver, Colo., Detroit, Mich., Omaha, Nebr., and points in Arkansas, Illinois, Iowa, Kansas, Missouri, Oklahoma, and Texas, (2) from Little Rock, Ark., and from points in that part of Arkansas on, north, and west of a line beginning at the Arkansas-Oklahoma State line near Fort Smith, Ark., and extending along Arkansas Highway 22 to Dardanelle, Ark., thence northward along Arkansas Highway 7 to Harrison, Ark., and thence along U. S. Highway 65 to the Arkansas-Missouri State line, to points in Illinois, Michigan, Missouri, and Texas, (3) from points in Minnesota on and south of U. S. Highway 14 to Omaha, Nebr., and points in Arkansas, Kansas, Missouri and Oklahoma, (4) from points in the Lower Peninsula of Michigan to Omaha, Nebr., and points in Kansas, Missouri, and Oklahoma, (5) from Kansas City, Kans., Kansas City, Mo., Omaha, Nebr., and Oklahoma City, Okla., to points in California and Oregon, (6) from Omaha to points in Arkansas, and (7) from Chicago, Ill.; to Kansas City, Mo., and (b) of frozen fish when moving in the same vehicle with frozen fruits, frozen berries, or frozen vegetables from Monterey, San Jose, San Francisco, and Los Angeles, Calif., Idaho Falls and Twin Falls, Idaho, Astoria, Oreg., and Seattle, Wash., to points in Arkansas, Illinois, Iowa, Kansas, Missouri, Oklahoma, and Texas, all over irregular routes, and has so operated since that time; that applicant is entitled to a certificate authorizing continuance of the described operation; and that the application in all other respects should be denied."

On September 27, 1961, Division I of the Interstate Commerce Commission denied a substantial part of the authority sought by plaintiff, and restricted and delineated the authority recommended by Hearing Examiner Cave, set forth above. Shaw requested reconsideration, which was denied February 7, 1962.

On March 29, 1962, Shaw commenced the initial action in this court against the United States and the Interstate Commerce Commission to review and set aside the report and order of the Commission of September 27, 1961. This court, Circuit Judge M. C. Matthes, District Judges John E. Miller and J. Smith Henley, dismissed the plaintiff's complaint February 11, 1963, and plaintiff's motion for rehearing was denied by the court March 8, 1963.

Shaw appealed the judgment dismissing his complaint to the Supreme Court of the United States, which reversed the judgment of this court May 4, 1964, and in a per curiam opinion, 377 U.S. 159, 84 S.Ct. 1154, 12 L.Ed.2d 211, stated:

"Appellant applied to the Interstate Commerce Commission under the grandfather clause of the Transportation Act of 1958, Sec. 7(c), 72 Stat. 573, 49 U.S.C. Sec. 303(b) (6), to transport as a common carrier over irregular routes frozen fruits, berries, and vegetables, and frozen seafoods and poultry when transported with such frozen fruits, berries, and vegetables. The Commission granted a certificate which substantially curtailed appellant's prior operations. 89 M.C.C.

377. The District Court affirmed without opinion.

"We think United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971, requires reversal of the judgment and a remand to the Commission for reconsideration in light of appellant's status and performance as a common carrier, the transportation characteristics and marketing pattern of these seasonal agricultural products, and the demonstrated ability of appellant to perform the services. [Id., at 482–489] [62 S.Ct., at 726–730]."

On June 15, 1964, this court remanded the case to the Interstate Commerce Commission for further proceedings consistent with the above quoted opinion and mandate of the United States Supreme Court. The Commission's report, February 2, 1965, contains two dissents, one by Commissioner Webb and one by Commissioner Brown. The dissents emphasized that the items in question, frozen fruits, frozen berries and frozen vegetables, should be considered for the purposes of this plaintiff's application as a single class of commodities. They were of the opinion that the territorial authority should be granted on the basis of considering these three items as a single class because of their common characteristics, common packing and handling and delivery to common consignees.

Willis D. Shaw, as an individual, began operating a trucking business in 1938. From the period 1938 through 1948 he transported in interstate commerce fresh fruit, fresh vegetables and live poultry between points in Arkansas, Georgia, Delaware, Maryland, Indiana, Missouri, Oklahoma, Kansas, Texas, Illinois, Minnesota, Michigan, Iowa, Florida, Louisiana, New York, Colorado, Ohio, Pennsylvania, Alabama, California, New Mexico, South Dakota, Kentucky, and Wisconsin. The trucking operation during this period was operated both for hire and as a buy-and-sell with approximately 20 tractors and trailers. Between 1948 and 1957 the trucking operation was operated as a partnership by Willis Shaw and Ellis Bogan. They transported in interstate commerce fresh fruits and vegetables and frozen commodities in straight and mixed loads, both for hire and buy-and-sell. In 1957 a contract carrier permit was granted, authorizing the transportation of frozen poultry and frozen foods from three named companies from Little Rock and points in northwest Arkansas to points in eight western states. The permit was converted to an interstate certificate June 2, 1958, and was transferred to Willis Shaw Frozen Express, Inc., on February 4, 1959. Since 1948 the partnership and later the corporation, the present applicant, have transported frozen fruits, frozen berries, frozen vegetables, frozen poultry, frozen fish, as well as certain exempt items in straight and mixed shipments. The plaintiff presently maintains its general office at Elm Springs, Ark.

The plaintiff's application for "grandfather" authority resulted from the passage of the Transportation Act of 1958, which brought under regulatory power of the ICC commodities including frozen fruits, frozen berries and frozen vegetables, which prior to that time had been exempt from regulation. See 49 U.S. C.A., Sec. 303(b) (6). Prior to the passage of the Transportation Act, Shaw was in bona fide operation as an irregular-route motor common carrier in interstate commerce, transporting frozen fruits, frozen berries and frozen vegetables. In its application for a "grandfather" certificate it sought authority to transport these items in the future in the same territory as it had prior to the passage of the 1958 Act when they were exempt.

The question presented here is whether the Commission's limitation on the plaintiff's certificate, by delineating territory and commodity authority, denied the plaintiff substantial parity between its bona fide operations before 1958, as provided in the "grandfather" clause of the Transportation Act of 1958, and its future operations.

The plaintiff in its brief dated January 3, 1966, and in its oral argument before the court on April 5, 1966, contends that the Commission's findings are not supported by substantial evidence and that the Commission erroneously applied the applicable law in:

(1) treating frozen fruits, berries, and vegetables as separate classes of commodities, without regard to the transportation and marketing characteristics of these seasonal agricultural products or the character of service performed by Shaw;

(2) atomizing the commodity scope of Shaw's prior service by authorizing future transportation of frozen fruits only between certain points, frozen vegetables only between other points, or frozen vegetables and berries only between still other points;

(3) pulverizing the territorial scope of Shaw's prior service by authorizing future operations based solely on the number of times Shaw had transported a certain commodity between certain pairs of points both before and after May 1, 1958;

(4) refusing to accept and consider evidence relevant to the scope of Shaw's prior bona fide operations and ability to perform service within the scope of Shaw's common carrier undertaking.

In substance, the plaintiff contends that the Commission did not grant it authority to carry the same goods to and between the same places after 1958 as it had before that time, and thus its operations are not on a "substantial parity" as they existed prior to the 1958 Act. Thus, the plaintiff contends that the ICC has not granted it a "grandfather" certificate which allowed it to operate in substantially the same manner as it was operating prior to the passage of the 1958 Transportation Act.

The defendants deny that the ICC failed to apply the applicable statutory standards in limiting the plaintiff's "grandfather" certificate authority, and deny that the Commission's findings are not supported by substantial evidence.

The defendants contend (a) actual and substantial bona fide operation rather than merely potential service is the proper standard by which an applicant's claim to grandfather rights must be tested; (b) mere holding out itself in the absence of actual service does not meet the statutory requirement of substantial service as distinguished from incidental, sporadic or infrequent service; (c) frozen fruits, frozen berries, and frozen vegetables do not constitute a single class of commodities as a matter of law; (d) actual isolated transportation of items between given points does not of itself entitle an applicant to grandfather rights to transport such items between such places.

In particular the defendants contend that the Commission's findings with respect to the geographical limitations imposed upon the plaintiff's grant of authority is supported by substantial evidence. For example, the defendants contend that the applicant at no time either before or after the effective date of the 1958 Transportation Act transported any shipments of any commodities in the following seven states: Alabama, Florida, Indiana, Kentucky, Massachusetts, Mississippi, and New Mexico. In addition, the defendants contend that the applicant did not handle any shipments before the effective date of the Transportation Act in the following eight states: Arizona, Colorado, Georgia, Iowa, Louisiana, New Jersey, Ohio, and Tennessee. Single shipments were found by the Commission to have been carried by the applicant prior to May 1, 1958, in the following five states: Maryland, New York, Oklahoma, Pennsylvania and Utah. No shipments were carried from Wisconsin by the applicant after 1954. The Commission thus contends that it granted grandfather authority to the plaintiff to engage in motor carrier operations in areas in which it had been in bona fide operation.

The respective contentions of the parties require the court to determine the question whether or not the Commission correctly applied the applicable standards of the Transportation Act in granting

the plaintiff's grandfather certificate. The parties are in substantial agreement as to the applicable standards but differ as to their application to the facts as found by the Commission. As heretofore stated, the plaintiff contests the manner in which the Commission delineated the geographic scope of its operations, as well as the classification restriction on the items of frozen fruits, frozen berries and frozen vegetables.

### DISCUSSION

■ The Transportation Act of 1958, 49 U.S.C. Sec. 303(b) (6), subjected to Commission regulation the interstate motor carrier transportation of certain categories of agricultural commodities which had previously been exempt from such regulation, such as frozen fruits, frozen berries and frozen vegetables. Section 7(c) of the Act provides that those who on May 1, 1958, and thereafter were engaged "in bona fide operation" as a motor carrier of one or more of these commodities, upon application to the Commission, could secure "a certificate or permit, as the type of operation may warrant, authorizing such operations as a common or contract carrier by motor vehicle" as the applicant previously had performed. The purpose of Section 7(c) of the Transportation Act of 1958, as of the "grandfather" provisions of the Motor Carrier Act of 1935, was to assure those to whom Congress had extended its benefits a "substantial parity between future operations and prior *bona fide* operations [which the statute contemplates]." United States v. Carolina Carriers Corp., (1942) 315 U.S. 475, 481, 62 S.Ct. 722, 726, 86 L.Ed. 971; Alton R. Co. v. United States, (1942) 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586.

■■ When the applicant has carried a wide variety of general commodities, he cannot necessarily be restricted to those which he carried with more frequency and in greater quantities than the others. The Commission may not atomize his prior service, product by product, or point by point, so as to restrict the scope of his operations, where there is substantial evidence in addition to his holding out that he was in "bona fide operation" as a "common carrier" of a large group of commodities or of a whole class or classes of property. United States v. Carolina Carriers Corp., supra, at 315 U.S. 483–484, 62 S.Ct. 722.

■ The statute makes actual and substantial, rather than merely potential, service the standard by which an applicant's claim to "grandfather" rights must be tested. In determining the scope of an applicant's holding out and actual performance on or before the "grandfather" date and thereafter, the Commission is not obliged to treat frozen fruits, frozen berries and frozen vegetables as a single class of commodities, as a matter of law. That the foods were processed in the same plants, required the same transport facilities and were delivered to warehouses having freezer facilities may indicate that they were handled as one class. Frozen Food Express v. United States (N.D.Tex.1963) 219 F.Supp. 131, 140; Winter Garden Co. v. United States (E.D.Tenn.1962) 211 F.Supp. 280, 289.

■ When the applicant has established that it was a "common carrier" for a group of commodities or for an entire class or classes of property and was in "bona fide operation" during the critical periods in a specified territory, restrictions on commodities which could be moved in any one direction or between designated points would not be justified. The fact that a particular commodity had never been transported between certain points in that territory would not mean that authority to haul it between them should be withheld. Likewise, if the applicant has established that it was a "common carrier" only of a limited number of commodities, there would normally be no statutory sanction for limiting the carriage of particular commodities in that group to specified points in the authorized area. An applicant who has established his status of "common carrier" would be entitled to carry all of the commodities embraced in his undertaking to all points to which any shipments of any articles were authorized. Once

the common carrier status of an applicant had been established as to those commodities transported, shipments to any parts of the authorized territory, or to any of the authorized points therein, should be permitted, in absence of evidence that the applicant as to carriage between specified points had restricted its undertaking to particular commodities. United States v. Carolina Carriers Corp., supra, at 315 U.S. 486–487, 62 S.Ct. 722.

■ In determining the scope of a "grandfather" applicant's undertaking so as to assure it "substantial parity between future operations and prior *bona fide* operations" in the common carrier transportation of frozen fruits, frozen berries and frozen vegetables, the Commission is required to consider the application in light of the applicant's status and performance as a common carrier, the transportation characteristics and marketing pattern of these seasonal agricultural products, and the demonstrated ability of the applicant to perform the services. Willis Shaw Frozen Express, Inc. v. United States, (1964) 377 U.S. 159, 84 S.Ct. 1154, 12 L.Ed.2d 211.

■ The Commission on remand failed to apply the principles of the decision in the Carolina Carriers case. A motor common carrier holding itself out to transport a group of commodities, and demonstrating the actual ability to perform the service held out, is entitled to grandfather authority to transport the entire group of commodities between all points and areas authorized in the absence of Commission findings, supported by substantial evidence, that the carrier had limited its holding out between certain points or areas. The mere fact that the carrier did not transport all or every commodity between all points and areas served does not justify a limitation of the commodities to be transported in the future.

■ The court is not unmindful of its limited scope of review in this matter. It is not at liberty to substitute its opinion of the evidence or conclusions or judgment for that of the Commission. Such determinations are solely within the province of the Interstate Commerce Commission, and the Congress has expressly delegated these matters to the expertise of the Commission, American Trucking Ass'n v. United States (1953) 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337; East Texas Motor Freight Lines v. Frozen Food Express (1956) 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 917; Winter Garden Co. v. United States, supra. The court may set aside determinations of the Commission only when clearly erroneous or when the Commission has failed to apply the proper governing principles.

The court has examined carefully and in detail the lengthy report of the Commission. No useful purpose would be served by abstracting or quoting at length from the report. The Commission has found that the applicant has solicited and held itself out to transport the commodities shown in its application both prior and subsequent to the "grandfather" date and the Commission has conceded Shaw's status as a common carrier and its ability to serve within the limits of the equipment available for its use. But the Commission has undertaken to evaluate that holding out and ability without sufficient findings as to the transportation characteristics and marketing pattern of the seasonal agricultural products involved.

As in Winter Garden and Frozen Food Express, supra, the Commission here refused to treat frozen vegetables, frozen fruits and frozen berries as a single class of commodities. It viewed each of those items as a separate class and limited plaintiff's operating authority accordingly. The Commission took the position that proper characterization of those commodities in relation to each other presented a question of fact, and then proceeded as though the question had been answered adversely to the contentions of plaintiff.

In the *Winter Garden* case the court said at page 289 of 211 F.Supp.:

"It is our opinion that frozen fruits, frozen berries and vegetables possess

the necessary similarities in transportation and marketing characteristics and are sufficiently related to justify the conclusion that they are 'a whole class or classes of property' within the meaning of the Supreme Court's ruling in the case of United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 * * *.

*   *   *   *   *   *

"These foods were processed in the same plants, required the same transport facilities and were delivered to warehouses having freezer facilities. Insofar as the parties held themselves out to carry these items, they should be treated as belonging to the same class * * *."

In *Frozen Food Express*, supra, 219 F.Supp. at 140, the court had this to say about the Winter Garden case:

"The plaintiff's remaining claim is that frozen fruits, frozen berries and frozen vegetables should have been treated as one class of commodity as a matter of law. It cites Winter Garden Company v. United States, supra, in support of its contention. As we construe that decision, it holds that under the *proof* in that record, the three commodities in question were one class. The result was reached as a finding on a fact issue, rather than as a matter of law. While the language of the Act may not foreclose a fact issue on this matter, there is nothing in such language indicating that these commodities *must* be treated as one class. The Winter Garden case is distinguishable on the ground that there is no proof in this case raising any fact issue on this question. But, as there could be a relationship between this aspect and the holding out and solicitation prob-

lems, we think it should be open for proof and further consideration on remand."

In the instant case although the Commission evidently found that the commodities involved did not comprise a single class of commodities, the court is unable to find from the report of the Commission any basis or explanation for the findings, and the dissenting opinions indicate the dissenters' view that the commodities should have been treated as a single class. All three commodities are products of the soil, all three are amenable to preservation by quick freezing, and in general all three are adapted to transportation and storage by the same means and facilities.

In such circumstances it seems to the court that when the Commission fails to find that as far as a particular carrier is concerned the three commodities are one class, the Commission should set forth the basis of its conclusion. In this case the court thinks that the Commission should at least point out to the court wherein the frozen fruits, berries and vegetables hauled by plaintiff differ from those which were being hauled by the Winter Garden Company.

The court holds that the Commission has not fully complied with the mandate of the Supreme Court and that the case should be remanded to the Commission. If the record is insufficient to enable the Commission to make the necessary determination of fact, it may receive further evidence.

The conclusions of the Interstate Commerce Commission are erroneous and must therefore be set aside, and the case remanded to the Commission for further consideration in accordance with the applicable rules of law above set forth, and it is so ordered.