The **WINTER GARDEN COMPANY, Inc.,** and the **Winter Garden Freezer Company, Inc.**

v.

**UNITED STATES of America and Interstate Commerce Commission.**

**Civ. A. No. 5457.**

United States District Court
E. D. Tennessee, N. D.

Nov. 21, 1966.

E. Bruce Foster, Frantz, McConnell & Seymour, Knoxville, Tenn., D. Herbert Glazer, Memphis, Tenn., William J. Augello, Jr., New York City, for plaintiffs.

John H. D. Wigger, Dept. of Justice, Washington, D. C., J. H. Reddy, U. S. Atty., Chattanooga, Tenn., Fritz R. Kahn, Associate Gen. Counsel, I. C. C., Washington, D. C., for defendants.

Before HARRY PHILLIPS, Circuit Judge, LESLIE R. DARR, Senior District Judge, and ROBERT L. TAYLOR, District Judge.

PER CURIAM.

This is the second appearance of this case. In an order, based upon its opinion handed down on October 22, 1962, Winter Garden Company, Inc. v. United States, 211 F.Supp. 280, this Court set aside the findings and conclusions of the Interstate Commerce Commission (hereinafter called "Commission") and remanded the two causes for further consideration in accordance with the views therein expressed.

On the reconsideration the Commission substantially modified its decision in both No. MC–118025, being the "grandfather" application of Winter Garden Company, Inc. (hereinafter referred to as "025" or "Garden"); and in No. MC–118244, the "grandfather" application of the Winter Garden Freezer Company, Inc. (hereinafter referred to as "244" or "Freezer"). But Garden and Freezer were not satisfied and have filed a joint complaint to enjoin, set aside or annul the Order of the Commission, and to enter a decree declaring that plaintiffs were in bona fide operation on May 1, 1958 and continuous since that time within the territory described in their GRANDFATHER APPLICATIONS, and asking that the entire proceeding be remanded to the Commission for further consideration and new findings not inconsistent with the Court's decree.

In the briefs it was conceded by plaintiffs that they "are not attacking Commission's denial of non-radial authority between the numerous states listed in the applications." Plaintiffs' "allegations of error are confined to the Commission's limitation of authority to certain destination *points* served from Tennessee, and its rejection of plaintiffs' claim to additional authority to those destination states."

The Commission in modifying its decision accepted the Court's mandate that "frozen fruits, berries, and vegetables (Garden transported frozen berries and vegetables only) have been transported as one class of commodities by applicants throughout the territories they have served; and that when all of applicants' shipments (including those in 1956) are considered in light of the characteristics of the service rendered, applicants are entitled to certain additional 'grandfather' authority." The Commission concluded that it was " * * * precluded from

restricting the combining of private and for-hire operations * * *"

It also concluded that authority should be granted "to *Garden* to originate traffic at all points in Tennessee." It extended the territorial authority to the entire states of Florida, Massachusetts, New Jersey, New York, Pennsylvania, Texas and Virginia. It granted point-to-point authority to the Minneapolis commercial zone (including St. Paul and Hopkins) but did "not believe" that a single isolated shipment of 8478 pounds to Fairmont in 1956 provided a basis for expanded authority to Minnesota. Traffic before and after the critical date to Kansas City and St. Louis did not, it said, demonstrate an area-wide operation to Missouri. Operation to Providence before and after the critical date justified authority thereto. It was not persuaded that substantial operation to Connecticut was demonstrated by seven shipments to Bridgeport in 1956 and four to Hartford in late 1956. Likewise it concluded that one shipment to Peoria in 1956 and a few to Milan after the critical date did not indicate territorial operations to Illinois since the great bulk of the shipments moved to Chicago. The decision made no reference to designations in several states about which Garden complains.

As to *Freezer*, it extended the territorial authority to all of Indiana. It allowed point-to-point authority to Searcy and Little Rock in Arkansas but denied state-wide authority on the basis of one shipment in 1958 (of 6090 pounds) to Blytheville. It denied authority to Kansas although there had been continuous movement to Kansas City and Wichita. It denied state-wide authority to Maryland on the basis of continuous service to Landover and Baltimore and one shipment to Salisbury (8400 pounds) in 1957. The grant to Washington, D. C. was ordered to embrace Landover which was nearby. It denied state-wide authority to Massachusetts on the basis of shipments to Worcester and to points in the Boston commercial zone, which cities

were authorized. It granted authority to the Minneapolis commercial zone (including St. Paul and Hopkins) but not to Fairmont. Service to Kansas City, Missouri was embraced in the grant to Kansas City, Kansas. It denied grandfather rights to the State of Oklahoma although there had been continuous shipments to Oklahoma City and two shipments (30,-400 and 9,200 pounds) to Ardmore in 1958 and five shipments of 2700, 4500, 4050, 4500 and 5400 pounds) to Tulsa in 1958 and 1959. It granted authority only to Oklahoma City and withdrew the previous authority to Ardmore. Similarly it denied state-wide authority to Virginia (only to Exmore), despite the fact that numerous shipments were made to seven or eight other Virginia points (in 1958 and 1959). The reason given was that all shipments other than to Exmore were subsequent to the critical date. State-wide authority to Wisconsin was denied; only point-to-point authority to Milwaukee. It reasoned that one shipment in 1957 (5400 pounds) to Madison and one in 1958 to Racine (900 pounds) constituted a sparse operation not warranting authority other than to Milwaukee.

The Court will not consider shipments by either Garden or Freezer originating in states other than Tennessee in view of the concession in plaintiffs' reply brief that the complaint here is confined to limitations on authority to destination points served *from* Tennessee.

The Commission's holding as to Garden is summarized in its Findings as follows:

"In No. MC–118025, on further consideration we find that applicant was, on May 1, 1958, in bona fide operation, in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular routes, of frozen berries and frozen vegetables from points in Tennessee to Birmingham, Ala., Houston, Del., Atlanta, Ga., Chicago, Ill., Louisville, Ky., Landover, Md., Minneapolis, Minn., Kansas City and St. Louis, Mo., Omaha, Nebr., Oklahoma City, Okla., Providence, R. I.,

Milwaukee, Wis., and points in Florida, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas, and Virginia; and has so operated since that time; that a certificate authorizing the continuance of such operations should be granted; and that the application in all other respects should be denied."

Its holding as to Freezer as to destinations served from Tennessee are summarized in its Findings as follows:

"In No. MC–118244, on further consideration we find that applicant was, on May 1, 1958, in bona fide operation, in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular routes, of frozen fruits, frozen berries, and frozen vegetables (1) from points in Tennessee to Little Rock and Searcy, Ark., Hartford, Conn., Houston, Del., Kansas City and Wichita, Kans., Louisville, Ky., Baltimore, Md., Boston and Worcester, Mass., Minneapolis, Minn., St. Louis, Mo., Omaha, Nebr., Oklahoma City, Okla., Exmore, Va., Milwaukee, Wis., Washington, D. C., and points in Alabama, Florida, Georgia, Illinois, Indiana, Louisiana, Michigan, Mississippi, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina and Texas, * * *"

Commissioner Brown, dissenting, had this to say:

"It is difficult, if not impossible, for me to understand the basis for the territorial grants. Apparently, the test for point-to-point or statewide authority is 'substantial operation,' which may be fine. But how, I ask, does one reconcile the findings of the majority with respect to (1) Missouri, where two major points were not enough for a statewide grant; (2) Virginia, where three points before the critical date and four points thereafter warranted a statewide grant; (3) Texas, where two points served before the critical date and five thereafter were sufficient for a statewide grant; and (4) Rhode Island, where service to Providence before and after the statutory date was not deemed an adequate showing?"

*Garden* makes no claim that the Commission erred in denying authority from Tennessee to California, Kansas, Mississippi or West Virginia. It does seek reversal of the limitation of authority from Tennessee to serve only specific points in Alabama, Arkansas, Connecticut, Delaware, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maryland, Minnesota, Nebraska, Oklahoma, Rhode Island, South Carolina and Wisconsin.

Freezer seeks reversal of the denial of statewide authority to serve, from Tennessee, the States of Arkansas, Connecticut, Delaware, Kansas, Kentucky, Maryland, Massachusetts, Missouri, Nebraska, Oklahoma, Virginia and Wisconsin.

In support of its denial of statewide authority to the states listed above and of confining its grant of authority in some of these states simply to one, or possibly two, destinations, the Commission states that claimants are bound under the statute to have made deliveries both prior and subsequent to the critical date.

The Court, of course, recognizes the limitations of the statute and upon its own authority in review. See its opinion in Winter Garden Company v. United States, supra.

However, the Court is concerned whether the Commission in making the limited grants to point-to-point destinations, particularly in Rhode Island, Connecticut, Delaware and Maryland in the case of Garden and particularly in Massachusetts, Rhode Island, Connecticut, Delaware, Maryland and Virginia in the case of Freezer has not given undue weight to what are called "substantial operations" and has lost sight, as the Supreme Court said in Willis Shaw Frozen Express, Inc. v. United States, et al., 377 U.S. 159, 84 S.Ct. 1154, 12 L.Ed.2d

211, of "* * * the transportation characteristics and marketing pattern of these seasonal agricultural products * * *" The Supreme Court in that case deemed them important enough to warrant reversal of the judgment, and remand of the case to the Commission for reconsideration, noting also that "The Commission granted a certificate which substantially curtailed appellant's prior operations." We have already spoken of Commissioner Brown's dissent which called attention to some of the inconsistencies and injustices of a rigid approach.

This Court, in its previous opinion, developed the peculiar characteristics of this type of traffic and noted the considerable hazards of its functioning. Such things as the highly uncertain seasons, overcrowded freezer space, marketing patterns, massive power failures, etc., warrant some liberality in the granting of authorities. See Frozen Food Express v. United States, 219 F.Supp. 131, 139 (D.C.Texas); Willis Shaw Frozen Express, Inc. v. United States, supra. We think that a too rigid grant of authority might well result in disaster to a particular carrier. The characteristics attendant upon transportation of frozen foods differ materially from those surrounding the transportation of hard goods and we agree with Commissioner Brown that the Commission should be liberal in its grant of authority in this type of carriage.

Although we have named particular states for special consideration, in reversing and remanding the case to the Commission for reconsideration, we direct that attention be given also to the risks from characteristics noted above of granting authority to a single metropolitan center in a particular state, such as Atlanta in Georgia and Birmingham in Alabama. Statewide or at least regional authority within a state would serve to level off the perils in this type of operation.

The parties will prepare an order in conformity with the opinion of the Court in this memorandum.