M. I. O'BOYLE & SON, Inc. v. INTERSTATE COMMERCE COMMISSION et al.

No. 11535.

United States Court of Appeals District of Columbia Circuit.

Argued April 17, 1953.

Decided June 30, 1953.

Mr. Clarence D. Todd, Washington, D. C., with whom Mr. Ralph E. Curtiss, Washington, D. C., was on the brief, for appellant. .

Mr. Frank H. Strickler, Asst. U. S. Atty., with whom Messrs. Charles M. Irelan, U. S. Atty., and William R. Glendon, Asst. U. S. Atty., at the time of argument, were on the brief, for appellee Interstate Commerce Commission. Messrs. Leo A. Rover, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty. a the time the record was filed, also entered appearances for appellee Interstate Commerce Commission.

Mr. Beverley S. Simms, Washington, D. C., entered an appearance for appellee Leaman Transp. Corp.

Before WILBUR K. MILLER, PROCTOR and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The appellant company, hereinafter referred to as O'Boyle, holds a certificate of public convenience and necessity, issued by the Interstate Commerce Commission, to transport petroleum products in bulk, in tank trucks, over irregular routes, from points and places in the Washington, D. C., commercial zone to points in West Virginia, Maryland and Virginia. It also holds a second certificate granting the right to transport petroleum from points and places in Pennsylvania and New Jersey "To the site of Bolling Field, in Washington, D. C." Bolling Field is located within the Washington, D. C., commercial zone referred to in the first certificate.

On petition of certain intervenors who contended that O'Boyle was operating without authority from Pennsylvania and New Jersey directly to places in Maryland and Virginia, proceedings on the latter certificate were reopened for reconsideration. Division 5 of the Interstate Commerce Commission issued an "Interpretation of Certificate" stating that the real question was whether O'Boyle by "tacking" the authority under the two certificates, could render service from Pennsylvania and New Jersey origins to points in Maryland and Virginia. It was concluded that O'Boyle could do so,

"* * * provided that the actual operations conducted thereunder included a physical operation through Bolling Field. If the military officials in charge of the field prohibit such a physical operation, thus preventing applicant from meeting the above-described condition, it may not combine or tack the involved authorities. * * *" [1]

O'Boyle petitioned the entire Interstate Commerce Commission for reconsideration of this interpretation, contending that the site of Bolling Field should include the highway contiguous to the entrance to the field. The petition was denied.

The Interstate Commerce Commission thereafter filed a complaint in the court below for an injunction against O'Boyle under the provisions of Section 222 (b) of the Interstate Commerce Act, 49 Stat. 564 (1935), as amended, 49 U.S.C.A. § 322(b). [2] The complaint alleges *inter alia* that O'Boyle had been transporting petroleum products from Pennsylvania and New Jer-

---

1. In December, 1950, in the case of Leaman Transportation Corporation Extension—Virginia, M.C.—104347 (Sub-No. 75) involving an application by Leaman for a certificate of public convenience and necessity to transport petroleum products, in bulk, in tank trucks from Philadelphia to points in Virginia, O'Boyle opposed on the ground that by combining its separate authorities it was serving the same area. The Commission adhered to its former interpretation of O'Boyle's certificates and granted the certificate applied for since there was no evidence that the military authorities allowed O'Boyle to operate physically through Bolling Field. No petition for reconsideration of this order was filed by O'Boyle.

2. Coastal Tank Lines, Inc., E. Brooke Matlack, Inc., and Leaman Transportation Corporation were allowed to intervene as plaintiffs May 1, 1952.

sey to points in Maryland and Virginia without operating it trucks through Bolling Field, without a certificate of public convenience and necessity or other operating authority for such transportation, in violation of Section 206(a) (1) of the Interstate Commerce Act, 49 Stat. 551 (1935), as amended, 49 U.S.C.A. § 306(a) (1). In its answer O'Boyle admitted the operations but alleged that it operated its trucks through the site of Bolling Field, that this was authorized by a certificate of public convenience and necessity and was strictly in accord with applicable orders, laws, rules and regulations. It was further alleged that the meaning of the phrase "to the site", as determined in another proceeding,[3] was to the entrance to the military reservation there involved and that O'Boyle's operations conformed with this interpretation.

Upon motions for summary judgment by both parties, the District Court, Judge Pine sitting, found that O'Boyle

"* * * is operating its vehicles on highways adjacent to and outside of the military reservation of Bolling Field, that such operation does not comply with the terms of its operating rights as those rights were interpreted by the Interstate Commerce Commission, and that such operation is in violation of the provisions of 49 U.S.C. 306(a) (1) * * *."

The "tacking" complained of was enjoined unless O'Boyle,

"* * * in the course of such transportation, passes through the military reservation known as Bolling Field * * *."

On this appeal from the injunction O'Boyle's principal contention is that to require physical operation through Bolling Field, or to assume that the site encompasses only that portion of the military reservation within a fenced enclosure, is arbitrary and capricious.

Tacking or combining together separate grants of operating authority so as to furnish a through service is allowed, when the grants themselves contain no restrictions on tacking, if there is a point of service common to both authorities and the physical operation is rendered through the common point. Century-Matthews Motor Freight v. Thrun, 8 Cir., 1949, 173 F.2d 454; Aetna Freight Lines, Inc., Interpretation of Certificate, 48 M.C.C. 610 (1948); Transport Corp. of Virginia Extension—Maryland, 43 M.C.C. 716 (1944). See, also, Byers Transp. Co. v. United States, D.C.W.D.Mo.1943, 49 F.Supp. 828; Aero Mayflower Transit Co. v. United States, D.C.Neb.1951, 95 F.Supp. 258. O'Boyle does not meet these conditions by passing adjacent to the point claimed to be common. It is true that "To the site of Bolling Field" can mean up to but not into the reservation, and O'Boyle's questioned operation is through a point which is up to the site. But the purpose of the language in the certificate was to authorize deliveries to Bolling Field, not "up to" Bolling Field. This appears from the history of the certificate, which resulted from an application by O'Boyle for authority to maintain service from Pennsylvania and New Jersey to Baltimore, Maryland, and points in Baltimore, St. Marys, Calvert and Prince Georges Counties, Maryland, and the Washington, D. C., commercial zone. After a hearing the examiner recommended that O'Boyle be granted authority to serve only Bolling Field and another nearby air base.[4] In its report, M. I. O'Boyle & Sons, Inc., Extension—Bolling Field, M.C.—106965 (Sub-No. 15), the Commission points out that,

"* * * aside from the operations proposed to the two named air bases, it is clear that existing motor carrier service for the transportation of petroleum products * * * is reasonably adequate."

3. Missouri-Pac. Transp. Co. Extension—Fort Leavenworth, 41 M.C.C. 545 (1942); sustained in Kansas City & Leavenworth Transp. Co. v. United States, D.C.Del. 1943, 51 F.Supp. 916. No question of tacking was involved.

4. The right to render the service to points in the Washington, D.C., commercial zone was specifically denied at this time. Therefore, it cannot be argued that since Bolling Field is within the commercial zone, it and not Bolling Field is the common point or gateway.

476

This shows that the intention of the Commission in granting the certificate was to provide service only to the air bases. In view of the conclusion then reached of lack of need for additional services to points in Maryland and the Washington commercial zone from Pennsylvania and New Jersey, and in view of the general requirement that in order to tack, the operation must be through a common point, it is reasonable to require O'Boyle to pass through Bolling Field in order to maintain a through service as desired. In other words it is reasonable to say that the common point includes some part of the air base authorized to be served. Otherwise the tacking process would lend itself to an evasion of the grants of authority made in aid of the public convenience and necessity.

O'Boyle further urges that it was error for the court below to rely upon the "Interpretation of Certificate" made by the Commission. It is said that this interpretation was not part of any order and no order required compliance with it. Even if this be true, which we do not decide, the interpretation was available to the court for its consideration in reaching a decision. We do not construe the action of the court in issuing the injunction as a holding that the court was necessarily bound by the interpretation, compare, however, Southwest Freight Lines v. Interstate Commerce Com'n, 8 Cir., 1950, 184 F.2d 149, but as a ruling that the tacking operations complained of were illegal, in aid of which ruling the court relied in part upon the interpretation of the situation made by the Commission.

Affirmed.