**LINCOLN TRANSIT CO., Inc., Manhattan Transit Co., Tauck Tours, Inc., Allied Bus Corp. and Parker Tours, Inc., Plaintiffs,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Civ. A. No. 65 Civ. 3830.

United States District Court
S. D. New York.

July 27, 1966.

Robert E. Goldstein, Francis V. Goggins, New York City, for plaintiffs, Charles J. Williams, Newark, N. J., of counsel.

Donald F. Turner, Asst. Atty. Gen., Washington, D. C., Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, John H. D. Wigger, Washington, D. C., Atty., for United States.

Robert W. Ginnane, Gen. Counsel, Raymond M. Zimmet, Washington, D. C., Atty., for Interstate Commerce Commission.

William A. Roberts, Washington, D. C., for Heritage Tours, Inc., Harold Berns and Thelma Berns, defendant-intervenors, Emanuel Gold, New York City, of counsel.

## OPINION

Before MOORE, Circuit Judge, and HERLANDS and TYLER, District Judges.

HERLANDS, District Judge:

Pursuant to the provisions of 28 U.S.C. § 2325 (1965), a district court of three judges has been convened to hear and determine plaintiffs' application for an order "enjoining, setting aside, annulling, and suspending the order of the Interstate Commerce Commission dated November 30, 1965." Plaintiffs' application is denied for the reasons hereinafter set forth.

The primary issue for decision by this court is whether the procedure employed by the Interstate Commerce Commission (hereinafter "ICC") in approving the transfer of a license issued to a passenger broker under Section 211 of the Interstate Commerce Act [1] deprived plaintiffs of a hearing in violation of the due process provisions of the Constitution. We find that it did not.

### I.

The underlying facts are as follows: Ferdinand Arrigoni, Inc. was the holder of a passenger broker's license. It entered into a contractual agreement with Harold and Thelma Berns whereby a corporate subsidiary of Ferdinand Arrigoni, Inc. was to be created—Heritage Tours, Inc.—and said broker's license transferred to that subsidiary. For a consideration of $50,000, Arrigoni was to transfer all the stock of Heritage Tours, Inc. to Harold and Thelma Berns. On June 10, 1965, as supplemented on June 28, 1965,

1. 49 U.S.C. § 311 (1965).

Ferdinand Arrigoni, Inc. and Heritage Tours, Inc. (collectively "the applicants") filed with the ICC in Washington an application for approval of the transfer of Arrigoni's passenger broker's license to Heritage and of the simultaneous transfer of all of Heritage's stock to Harold and Thelma Berns. The application was filed under rules and regulations promulgated by the ICC pursuant to Section 204(a) (4) of the Interstate Commerce Act.[2] See 49 C.F.R. Part 169.1; 49 C.F.R. § 1.225(e). The application was referred to the ICC's Transfer Board. The Transfer Board approved the application in an order dated August 5, 1965 which was published in 30 Federal Register 10016 (1965)—the effective date of that order being September 7, 1965.

Pursuant to Rule 1.225(e) of the ICC's Special Rules of Practice,[3] plaintiffs and another interested party filed timely petitions for reconsideration of the order approving the transfer and requests for an oral hearing. Basically, the petitions for reconsideration raised two points: they stressed the undisputed fact that Thelma and Harold Berns are the daughter and son-in-law of one Sidney Englehardt who has interests in several common carriers; and they alleged in cursory fashion certain facts which plaintiffs interpreted as indicating the dormancy and consequent nontransferability of Ferdinand Arrigoni, Inc.'s license.

■ The filing of such petitions for reconsideration, by virtue of Section 17 (8) of the Interstate Commerce Act,[4] had the effect of postponing the effective date of the Transfer Board's order pending disposition of the petitions.

On December 2, 1965, the Commission, Division 3, acting as an appellate division, issued an order dated November 30, 1965 in which it denied the petitioners' requests on the grounds that:

"the petitions set forth no facts or arguments which were not previously considered or which would establish that the transfer was not properly approved under the Rules and Regulations Governing Transfers of Licenses under Section 211 Interstate Commerce Act (49 C.F.R. Part 169); and that a hearing is not necessary to a determination of the matter * * *."

The Transfer Board's order approving the transfer was to become effective on December 17, 1965. On December 16, 1965, plaintiffs filed their complaint in the case at bar.

## II.

The court's understanding of the Commission's procedure with regard to the transfer of brokers' licenses is that the transferor and transferee make an application to the Commission for its approval of the proposed transfer. In addition to considering the supporting documents submitted by the applicants, the Commission conducts an independent investigation. If the Commission approves the transfer, it gives public notice of its approval in the Federal Register. Opponents to the transfer then have a specified amount of time to file petitions for reconsideration. Timely filing of such petitions acts as a stay and postpones the effective date of the order ap-

---

2. 49 U.S.C. § 304 (a) (4) (1965).

3. 49 C.F.R. § 1.225(e). The rule reads, in pertinent part, as follows:
"(e) A petition seeking reconsideration of an affirmative order of the Transfer Board entered pursuant to the rules and regulations governing transfers of * * * passenger brokers' licenses, Part 169 of this chapter, * * * must be filed within 20 days following publication of a synopsis of such order in the Federal Register. In such a petition the matters claimed to have been erroneously decided and the alleged errors must be specified with particularity. If the petition contains a request for oral hearing, the request shall be supported by an explanation as to why the evidence sought to be presented cannot reasonably be submitted in affidavit form. Within 20 days after the final date for filing of such petitions with the Commission, any interested person may file and serve a reply thereto."

4. 49 U.S.C. § 17(8) (1965).

proving the transfer until after the Commission has determined the merits of the petitions for reconsideration.

■ It is the court's further understanding that petitioners are free to append affidavits and other documentary evidence to their petitions for reconsideration. However, the Commission's rules specifically provide that requests for an oral hearing must be accompanied by an explanation as to why the evidence sought to be presented cannot reasonably be submitted in affidavit form—a requirement plaintiffs failed to satisfy. See 49 C.F.R. § 1.225(e). Where the Commission finds that a decision cannot be rendered on documentary evidence alone, an oral hearing is afforded the petitioner. It is difficult to see how such a procedure can be found to deprive plaintiffs of due process of law.

While plaintiffs allege that they were afforded no opportunity to introduce evidence in the proceedings before the ICC, they conceded at the oral argument of this matter that they never attempted to submit any documentary evidence for the Commission's consideration, nor did the Commission at any time indicate that it would reject such a submission. Plaintiffs' allegation of a lack of opportunity to introduce evidence apparently is based solely upon their reading and interpretation of the Commission's Rules of Practice.

### III.

■ Plaintiffs also contend that they were entitled, as a matter of right, to an oral hearing, as opposed to a review based upon documentary evidence. They rely principally upon Sections 5,[5] 7,[6] and 8[7] of the Administrative Procedure Act.

Beyond cavil, Sections 7 and 8 apply only to hearings which Section 5 requires to be conducted pursuant to those sections. On its face, Section 5 is applicable only to "adjudication[s] *required by statute* to be determined on the record after opportunity for an agency hearing * * *." (Emphasis added.) It is not disputed that no statute requires an agency hearing in situations like the one presently before this court. It would seem, therefore, that, on the face of Sections 5, 7 and 8, they are not applicable in this situation.

However, plaintiffs seek support for their contention in a judicial gloss placed upon the sections in question by the Supreme Court in the case of Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950). That gloss is to the effect that, if the Administrative Procedure Act governs the type of hearing which must be held when a statute requires that there be a hearing, it applies a fortiori when the Constitution requires that a hearing be held. See 339 U.S. at 50–51, 70 S.Ct. 445. They contend that certain of their property rights are involved—a contention they have not seen fit to elaborate upon—and any order of the Commission which deprives them of all or part of those property rights without any hearing would be unconstitutional as a deprivation of property without due process of law. See L. B. Wilson Inc. v. FCC, 83 U.S.App.D.C. 176, 170 F.2d 793, 802–03 (1948). Plaintiffs argue that, once it is determined that due process requires a hearing, the Supreme Court has held that the particular procedures to be followed at that hearing are those mandated by the Administrative Procedure Act. See Wong Yang Sung v. McGrath, supra; Riss & Co. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345 (1951) (per curiam), reversing 96 F.Supp. 452 (W.D.Mo.1950). In other words, plaintiffs contend that, even if the hearing or opportunity for a hearing which they did receive satisfied due process requirements, they are still aggrieved because the Commission did not afford them the particular procedures provided for in the Administrative Procedure Act.

---

**5.** 5 U.S.C. § 1004 (1965).

**6.** 5 U.S.C. § 1006 (1965).

**7.** 5 U.S.C. § 1007 (1965).

Whatever validity that argument may have in another factual context, it cannot prevail on the record now before us. Plaintiffs introduced before the Commission no evidence whatsoever in support of their conclusory allegations. Mere allegations, unsupported by any admissible evidence or even by an affidavit explaining why the evidence they allegedly plan to introduce at an oral hearing has not yet been produced, are insufficient to create the necessity for a hearing of any kind.

Since we find that there was substantial evidence to support the Commission's findings and that the order was in no way arbitrary or capricious, the Commission's order must stand. The rights, if any, of which plaintiffs were deprived were not of such a nature, in this factual context, to warrant this court's setting aside the Commission's order.

## IV.

At the oral argument of this matter, plaintiffs raised, for the first time, the issue of the applicability of Section 9(b) of the Administrative Procedure Act.[8] The right to a hearing in a Section 9(b) situation is determined by reference to the provisions of Section 5. Therefore, what has been said above concerning the applicability of Sections 7 and 8 is equally true with respect to Section 9(b).

## V.

In conclusion, the court notes that this decision upholding the Commission's order approving the transfer does not leave plaintiffs remediless should the fears they presently express prove justified by subsequent events. They have represented to the court that their primary concern is that Harold and Thelma Berns will discriminate in favor of their

relative, Sidney Englehardt, to plaintiffs' detriment. The Commission's broad powers to deal with misuse of licenses furnish protection to persons such as these plaintiffs.[9]

Plaintiffs' application for an order "enjoining, setting aside, annulling, and suspending the order of the Interstate Commerce Commission dated November 30, 1965" is hereby denied.

So ordered.

---

8. 5 U.S.C. § 1008(b) (1965).

9. See, e. g., Section 212(a) of the Interstate Commerce Act, 49 U.S.C. § 312(a) (1965), which reads in pertinent part:
   "Any * * * license may * * * upon complaint, or on the Commission's own initiative, after notice and hearing,

be suspended, changed, or revoked, in whole or in part, for willful failure to comply with any provision of this chapter, or with any lawful order, rule, or regulation of the Commission promulgated thereunder, or with any term, condition, or limitation of such * * * license * * *."