ATCHISON, TOPEKA AND SANTA FE RAILWAY et al., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

DELAWARE RIVER PORT AUTHORITY et al., Defendant-Interveners.

No. 3–71–Civ–80.

United States District Court,
D. Minnesota,
Third Division.

Dec. 1, 1971.

Robert B. Batchelder, Omaha, Neb., Curtis H. Berg, St. Paul, Minn., Frederick G. Pfrommer, Albert T. Suter, Walter G. Treanor, San Francisco, Cal., for plaintiffs.

Geraldine R. Keyes and Richard W. McLaren, Washington, D. C., Robert G. Renner, U. S. Atty., Minneapolis, Minn., for defendants.

Doherty, Rumble & Butler, Boyd H. Ratchye, St. Paul, Minn., for defendant-interveners.

## MEMORANDUM & ORDER

Before HEANEY, Circuit Judge, NORDBYE, Senior District Judge, and DEVITT, Chief District Judge.

DEVITT, Chief Judge.

This is an action brought by six western railroads to enjoin, suspend, annul, and set aside an order of the Interstate Commerce Commission dated August 25, 1971, entered in its Investigation and Suspension Docket, Number 8508, titled

Increased Waterborne Charge, North Atlantic, Pacific & Canadian Ports, 377 I.C.C. 534 (1970) insofar as this order concludes that a proposed increased waterborne charge at the western ports has not been shown to be just and reasonable. The action has been submitted on the pleadings, briefs, and the record before the Commission, including a transcript of the evidence and exhibits received by the Commission. Statutory jurisdiction is established.[1]

It is the position of plaintiffs that the Commission failed to comply with the requirements of 5 U.S.C. § 557(c) in that the Commission report, insofar as it pertained to the western ports, did not include a statement of findings and conclusions, or the reasons in support of these findings.[2]

The waterborne charge, which was designed to defray costs incurred by terminal carriers in connection with the handling of shipments moving through or via ports, first was proposed and approved in 1958.[3] In 1960 the Commission approved a one cent per hundredweight increase in the charge.[4] Subsequently the Commission permitted increases in the charge to nine cents in 1965, twelve cents in 1967, and in 1968 to thirteen cents per hundredweight.[5]

The carriers proposed to increase the existing waterborne charge at both the eastern and western ports effective November 1, 1969. As a result of protests filed, the Commission suspended the respective tariff publications for the statutory period authorized by Section 15(7) of the Interstate Commerce Act,[6] and directed that an investigation be made to determine whether the proposed increase in the waterborne charge was just and reasonable.

An oral hearing was held before an examiner of the Commission, evidence was presented by both the eastern and western carriers and testimony was received in opposition to the proposed increases.[7] Briefs were filed and on August 25, 1970, Division 2 of the Commission issued its report and order finding that the proposed increases were not just and reasonable. The order further directed respondent railroads to cancel the tariff provisions before October 12, 1970. The Commission's order was stayed pending a hearing on the carriers' petition for reconsideration and on January 5, 1971 the petition for reconsideration was denied and the tariff provisions ordered cancelled.[8]

In passing upon the determination of the Commission in this case, two sec-

---

1. Jurisdiction of the court is based on 28 U.S.C. §§ 1336, 1398, 2284, and 2321 through 2325. Venue is set in this court under 28 U.S.C. § 1398 as one plaintiff, Burlington Northern Inc., maintains its principal office at St. Paul, Minnesota.

2. 5 U.S.C. § 557(c) requires that the Commission include on the record the rulings on each finding or conclusion. In addition this section requires that all decisions include a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record. * * *" In addition to the suit in this court, several of the eastern carriers have filed a similar suit in the United States District Court for the Eastern District of Pennsylvania (71–154) in which they attack the Commission order insofar as it pertains to the eastern ports.

3. Increased Freight Rates, 1958, Ex Parte 212, 304 I.C.C. 289 (1958).

4. Increased Freight Rates, 1960, Ex Parte 223, 311 I.C.C. 373 (1960).

5. At thirteen cents per hundredweight the charge is equal to $2.60 per ton. At the proposed rate of sixteen cents per hundredweight the charge equals $3.30 per ton.

6. 49 U.S.C. § 15(7). This section provides the Commission with authority to suspend the effect of rates pending its investigation.

7. Appearing in opposition to the charges proposed by the western carriers was the Portland, Oregon Freight Traffic Association. (Tr. 486).

8. On January 15, 1971, the United States District Court in Pennsylvania issued a restraining order staying the Commission order pending a hearing and determination by that three-judge court. This order applied to the Commission order as it affected both the eastern and western carriers. Subject to accounting and re-

tions of the Interstate Commerce Act are appropriate for consideration. Section 14(1) of the Act places upon the Commission a duty to report in writing in respect to its investigations.[9] This section also requires that the Commission state in this report its conclusions, together with its decision, order or requirement. Section 15(7) of the Act places upon the carrier the burden of showing that any proposed rate change, charge, or practice is just and reasonable.[10]

It is also important to delineate the scope of judicial review as this pertains to orders of the Commission. The judiciary has been assigned a very limited role in reviewing the action of governmental administrative agencies. This role is restricted to a determination whether the agency committed any errors of law or transcended the legal limitations on its authority. The courts are not empowered to weigh the evidence de novo and reach an independent conclusion. Atlantic Refining Co. v. F. T. C., 381 U.S. 357, 85 S.Ct. 1498, 14 L. Ed.2d 443 (1965); I. C. C. v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102 (1947); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S. Ct. 692, 78 L.Ed. 1260 (1934); Great Northern Ry Co. v. United States, 209 F.Supp. 230 (D.Minn.1962). Although the court in reviewing administrative action is confined to the record made before the agency, National Broadcasting Co. v. United States, 319 U.S. 190, 63 S. Ct. 997, 87 L.Ed. 1344 (1943), the court may review the entire record and is not limited to those portions cited by the parties. 5 U.S.C. § 706. In addition, the burden of showing the invalidity of the Commission order rests on the plaintiff suing to enjoin and set aside this order. Hughes v. United States, 278 F. Supp. 11 (E.D.Pa.1967); North Carolina Utilities Commission v. United States, 253 F.Supp. 930 (E.D.N.C.1966); Fro-

zen Food Express v. United States, 219 F.Supp. 131 (N.D.Tex.1963).

Here the issues for the court are two: First, whether the record as a whole contains substantial evidence in support of the Commission's determination that plaintiffs had failed to prove the proposed increased waterborne additive was just and reasonable; and Second, whether the Commission's order is supported by adequate findings. Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); Interstate Commerce Commission v. J T Transport Co., 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961); United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942); United States v. Chicago, M., St. P. & Pac. R. R. Co., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023 (1935).

■ In dealing with the question of whether the Commission determination is supported by substantial evidence, the test generally applied is whether the evidence is "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." Illinois Central R. R. Co. v. Norfolk & Western Ry. Co., 385 U.S. 57, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966); National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939). This test is by nature objective and seeks to determine whether the agency reviewed "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); Chicago & Eastern Illinois R. R. Co. v. United States, 308 F.Supp. 645 (N.D.Ill.1969), vacated, remanded on other grounds, 400 U.S. 987, 91 S.Ct. 449, 27 L.Ed.2d 434 (1971).

---

fund provisions contained in this order, the eastern and western carriers are currently collecting the increased waterborne charge.

9. 49 U.S.C. § 14(1).

10. 49 U.S.C. § 15(7).

■ The record before the Commission indicates that the western carriers introduced statistics pertaining to terminal costs paid through the year 1968, the year of the general rate increase proceedings, But the western carriers were not able to furnish adequate statistical data for any period subsequent to that time. Although the one witness appearing on behalf of the western carriers attempted to show the reasonableness of the overall rate structure, he could only offer partial information relating to the volume of movements under the rates. In addition, the record indicates that the western carriers have not for some time paid all the port terminal costs but share with the water carriers the expenses incurred in car loading and unloading, wharfage, and handling.[11] We cannot say here that the Commission determination was not supported by substantial evidence.

■ The carriers urge that the Commission's order is not supported by adequate findings. Although the Commission may not find merely that the carriers failed to meet their burden of proof, State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291 (1931), here by necessity the Commission determination was required to be phrased in negative terms. It is well settled that where the ultimate finding is negative in form, it is required only that the report contain sufficient basic findings of fact to warrant a reviewing court to conclude that the Commission did not act without rational grounds. New York Central R. R. Co. v. United States, 99 F.Supp. 394 (D.Mass.1951), aff'd, ICC v. New York Central R. R. Co., 342 U.S. 890, 72 S.Ct. 201, 96 L.Ed. 667 (1951).

■ The Commission found the testimony presented by the carriers to be inconclusive. Further the Commission found that the application of the waterborne charge weakened the justification for the proposed increases.[12] In regard to the western carriers, the Commission specifically found that there was "an absence of clear and precise representative cost evidence demonstrating a need for additional revenues." [13] The Commission noted the claim of the western carriers that the cost of terminal services absorbed by them had increased, but observed the absence of statistical information as to the total railroad payment made by the western carriers.[14] In summary the Commission found that the carriers had failed to meet the burden of showing that the proposed waterborne additive was just and reasonable.[15] Our conclusion is that the Commission's order challenged here is based upon adequate findings and that these findings are in turn supported by substantial evidence.

Therefore, plaintiffs' complaint is dismissed.

11. The railroads complain that the Commission determination is not based upon substantial evidence. The record indicates that contrary to the presentation by the eastern carriers which encompassed many witnesses, the western carriers chose to stand on one witness who admittedly was not familiar with all the relevant information. (Tr. 383). In addition, portions of the data submitted by the western carriers reflected statistics current only to the year 1958. It is appropriate to note here, as was observed by the court in Boston and Maine R. R. v. United States, 153 F.Supp. 952 (D. Mass.1957), that the railroads must be held to have elected to sink or swim with the information they submitted to the Commission.

12. Evidence was presented that the waterborne charge, which had been originally designed to offset expenses of the terminal carriers was accruing to the benefit of non-terminal carriers through its inclusion in "line-haul" rates. Although the evidence presented in regard to this pertained to the eastern carriers, the western carriers, faced with the inference that their situation was similar, presented no evidence to the Commission to rebut that inference.

13. 337 I.C.C. 541.

14. 337 I.C.C. 538.

15. 337 I.C.C. 541.