**FROZEN FOODS EXPRESS, INC.** and Zero Refrigerated Lines, Inc.

v.

The **UNITED STATES** of America and the Interstate Commerce Commission et al.

No. SA–71–CA–337.

United States District Court,
W. D. Texas,
San Antonio Division.
June 28, 1972.

Ralph Pulley, Jr., Dallas, Tex., for plaintiffs.

C. J. Calnan, Asst. U. S. Atty., San Antonio, Tex., for the United States.

Richard Streeter, Washington, D. C., for Interstate Commerce Comm.

Eugene Anderson, Washington, D. C., for Missouri Beef Packers, Inc.

Ferd Meyer, Jr., San Antonio, Tex., for Missouri Beef Packers, Inc., Watkins Motor Lines, Inc., and Refrigerated Transport Co.

Alan E. Serby, Atlanta, Ga., for Watkins Motor Lines, Inc. and Refrigerated Transport Co.

Robert R. Digby, Whitten, Digby & Steiger, Phoenix, Ariz., and Mert Starnes, Austin, Tex., for W. J. Digby, Inc.

M. Ward Bailey, Fort Worth, Tex., and Mert Starnes, Austin, Tex., for Querner Truck Lines, Inc. and Lone Star Carriers, Inc.

Edward T. Lyons, Jr., Denver, Colo., for Bray Lines, Inc. and Denver-Albuquerque Motor Transp. Co.

E. Stephen Heisley, Washington, D. C., for Colonial Refrigerated Transport, Inc.

Emerson Banack, Jr., San Antonio, Tex., for W. E. Haynes, d/b/a Haynes Transportation Co.

## MEMORANDUM OPINION

Before THORNBERRY, Circuit Judge, and SUTTLE and WOOD, District Judges.

SUTTLE, District Judge.

Plaintiffs, Frozen Food Express, Inc. and Zero Refrigerated Lines, Inc. filed this action to suspend, annul, enjoin and set aside two decisions of the Interstate Commerce Commission (Commission).[1] This three-judge Court, convened pursuant to 28 U.S.C. § 2325, has jurisdiction of this action under 49 U.S. C. §§ 17(9), 305(g), 305(h) and 28 U.S. C. §§ 1336, 1398. The decisions of the Commission which are the subject of this action granted motor carrier authority to 16 applicants to transport meats and packinghouse products over

irregular routes from the plant site of Missouri Beef Packers at Plainview, Hale County, Texas to points throughout the United States. Plaintiffs, who already had authority to serve the Plainview area, are competitors of the applicants and opposed to the applications.

For purposes of clarity in this Opinion, the discussion of the proceedings before the Commission will be divided into two sections—The Querner Docket and the Haynes Docket. Since the legal issues with regard to each are identical, thereafter no separate discussion is necsary.

### The Querner Docket

During 1971, Missouri Beef Packers prepared to open a new packing plant at Plainview, Texas. Between May 7, 1970 and September 23, 1970, twenty-one applications were filed with the Commission by motor carriers seeking authorization to transport meat and meat by-products from Missouri Beef's new plant at Plainview to points throughout the United States. The Commission, after

1. The proceedings before the Commission are entitled Querner Truck Lines, Inc., Extension-Plainview, No. MC–340 (Sub-No. 16) (April 6, 1971) and W. E. Haynes d/b/a Haynes Transportation Co., Common Carrier Application, No. MC–134783 (Nov. 8, 1971). The Querner proceeding embraced the following applications: Transamerican Freight Lines, Inc., Extension Plainview, No. MC–10761 (Sub-No. 246) ; Clay Hyder Trucking Lines, Inc., Extension-Plainview, No. MC–25798 (Sub-No. 216) ; Watkins Motor Lines, Inc., Extension-Plainview, No. MC–95540 (Sub-No. 778) ; Alterman Transport Lines, Inc., Extension-Plainview, No. MC–107107 (Sub-No. 405)·; Refrigerated Transport Co., Inc., Extension-Plainview, No. MC–107515 (Sub-No. 698) ; Denver-Albuquerque Motor Transport, Inc., Extension-Plainview, No. MC–107839 (Sub-No. 142) ; Zero Refrigerated Lines, Extension-Plainview, No. MC–110098 (Sub-No. 108) ; Bray Lines, Inc., Extension-Plainview, No. MC–112822 (Sub-No. 157) ; Central & Southern Truck Lines, Inc., Extension-Plainview, No. MC–113267 (Sub-No. 238) ; Curtis, Inc., Extension-Plainview, No. MC–113678 (Sub-No. 389) ; Fox-Smythe

Transportation Co., Extension-Plainview, No. MC–114284 (Sub-No. 43) ; W. J. Digby, Inc., Extension-Plainview, No. MC–115826 (Sub-No. 207) ; Colonial Refrigerated Transportation, Inc., Extension-Plainview, No. MC–115841 (Sub-No. 379) ; Wilson Bros. Truck Line, Inc., Extension-Plainview, No. MC–116544 (Sub-No. 116) ; Hirschbach Motor Lines, Inc., Extension-Plainview, No. MC–117686 (Sub-No. 116) ; Miller Truck Line, Inc., Extension-Plainview, No. MC–118034 (Sub-No. 14) ; Everett Lowrance, Inc., Extension-Plainview, No. MC–118159 (Sub-No. 97) ; Caravan Refrigerated Cargo, Inc., Extension-Plainview, No. MC–119789 (Sub-No. 31) ; Hilt Truck Line, Inc., Extension-Plainview, No. MC–124211 (Sub-No. 146) ; and Lone Star Carriers, Extension-Plainview, No. MC–133805 (Sub-No. 2).

The following Intervenors seek to uphold the Commission's Orders: Querner Truck Lines, Inc.; Lone Star Carriers, Inc.; Watkins Motor Lines, Inc.; W. J. Digby, Inc.; Colonial Refrigerated Transp., Inc.; Denver-Albuquerque Motor Transp., Inc.; Haynes Transport Co.; Bray Lines, Inc.; and the shipper herein involved, Missouri Beef Packers, Inc.

making a preliminary examination of the various applications, ordered the proceedings to be handled under the Commission's "Modified Procedure," 49 C.F.R. § 1100.45 et seq. (1971), wherein verified affidavits were filed in support of the respective applications.

The applicants and Missouri Beef filed the verified affidavits and requested that the cases be consolidated under the Querner Docket. This request was granted. Plaintiffs filed countervailing affidavits in opposition to 16 of the 21 applications and requested oral hearings for the purpose of cross-examination of the witnesses offered on behalf of the applicants. See 49 C.F.R. § 1100.53 (1971).

On March 24, 1971, Commission Review Board No. 3 issued its order finding that public convenience and necessity required the issuance of certificates to 17 of the applicants.[2] The Board also denied the requests for oral cross-examination. On July 30, 1971, Division 1, acting as a Commission appellate division, affirmed Review Board 3 and denied plaintiffs' motions for reconsideration. By its Order, the Commission gave final approval of the issuance of fifteen certificates.[3] The Commission refused to impose an "originating at" restriction upon the certificates. Such a restriction would have restricted the operating authority of the applicants to traffic originating at the plant site of Missouri Beef.

### The Haynes Docket

By application filed July 20, 1970, W. E. Haynes d/b/a Haynes Transport Co. sought a certificate of public convenience and necessity authorizing operation to transport meat and meat by-products from points in Hale County, Texas to points in 18 states. The application was initially supported by the Jimmy Dean Meat Co., another packing plant located in Plainview, Hale County, Texas. Plaintiffs initially were opposed to the application but did not ask for an oral hearing. On February 10, 1971, under the Commission's Modified Procedure, Review Board 3 granted the application; the grant, however, contained an "originating at" restriction which restricted the operating authority of the applicant to traffic originating at the Jimmy Dean plant site. The Review Board's decision was premised on its finding that a grant of authority from points in Hale County to 18 states would subject protestants to possible diversion of traffic.

On April 8, 1971, Haynes requested the Commission to reopen the proceeding to allow into evidence Missouri Beef's Verified Affidavit supporting the grant of authority. On April 21, 1971, Frozen Food Express (FFE) filed a Motion to Strike, Reply and Request for Oral Hearing. Pursuant to Haynes' request, Division 1 reopened the proceeding and ordered that Missouri Beef's Verified Affidavit be received into evidence and made a part of the record. Frozen Food's Motion to Strike and Request for Oral Hearing were denied. Based upon the duel support of Jimmy Dean and Missouri Beef, Review Board 3 issued a revised order again granting applicant authority. The Board noted that it had not granted unrestricted authority earlier because of the potential threat of diversion, and because the application was

2. In the remaining four dockets where certificates were not authorized, the Review Board found a need for service but held the proceedings "open for further consideration of the fitness of those applicants after final effective determination of the pending proceedings investigating such issues of fitness" in related dockets. In the Commission's Order of July 20, 1971, one of the four, Lone Star Carriers, Inc., was found to be fit. The fitness issue has not been decided in the other three: Transamerican Freight, Denver-Albuquerque, and W. J. Digby.

3. The difference between twenty-one applications filed and fifteen certificates granted is explained by noting that in three instances, the opposition was discontinued and the Commission granted the certificates at an earlier date. The disposition of the remaining three dockets is noted in footnote 2, supra.

supported solely by Jimmy Dean. The Board found that because Missouri Beef now supported the application and a need for additional service was shown, and because the evidence no longer demonstrated a potential threat of diversion from existing carriers, no "originating at" plant restriction would be imposed.

On August 23, 1971, plaintiffs filed petitions for reconsideration. Zero, whose pleading was adopted by FFE, requested that the Haynes application be consolidated with the proceedings under the Querner Docket. This request was denied by Division 1 when, on September 20, 1971, it issued its Order denying protestants' petitions for reconsideration and oral hearing. The Commission reasoned that the findings of Review Board 3 were in accordance with the evidence and the applicable law, and because no sufficient or proper cause appeared for granting any of the relief sought. This exhausted plaintiff's remedies before the Commission in this docket.

This action, challenging both the Haynes and Querner Docket Orders, was filed November 23, 1971. Plaintiffs' application for a temporary restraining order to enjoin the Commission from issuing permanent certificates of operating authority to the applicant carriers was denied by this Court's Order of November 30, 1971. The authorized certificates were thereupon issued to the various applicants by the Commission and operations have been conducted under those certificates since that time.

## QUESTIONS PRESENTED

In our view, the following issues are presented by this case:

I. Whether the Commission's finding that the applicants' proposed service is required by public convenience and necessity was lawful and supported by substantial evidence;

II. Whether the Commission properly concluded that no material issues of fact requiring an oral hearing for cross-examination were presented; and

III. Whether the Commission acted within its discretion in concluding that no "originating at" restriction should be imposed upon the certificates granted to applicants.

## HOLDING

 It is our opinion that all relief sought by the plaintiffs should be denied. The law is well settled that the scope of judicial review of the Commission's Orders is strictly limited. 5 U.S.C. § 706; Towne Services Household Goods Transp. Co. v. United States, 329 F.Supp. 815, 819 (W.D.Tex.1971); Braswell Motor Freight Lines, Inc. v. United States, 271 F.Supp. 906, 911–912 (W.D.Tex. 1967), aff'd per curiam, 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968); Braswell Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98, 102 (W.D.Tex. 1967); aff'd per curiam, 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968); Alamo Express, Inc. v. United States, 239 F.Supp. 694 (W.D.Tex.1965), aff'd per curiam, 382 U.S. 19, 86 S.Ct. 83, 15 L.Ed.2d 14 (1965) (and cases cited therein).

> The function of the reviewing court . . . is limited to ascertaining whether there is warrant in law and the facts for what the Commission has done. Unless . . . there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law.

United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821 (1946). The test is whether the action of the Commission has a rational basis and is supported by

substantial evidence [4] on the record viewed as a whole. Illinois Cent. R. R. v. Norfolk & W. R. R., 385 U.S. 57, 66, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Gilbertville Trucking Co. v. United States, 371 U.S. 115, 126, 83 S.Ct. 217, 9 L.Ed.2d 177 (1962). The burden of showing the invalidity of the Commission Order rests on the Plaintiff suing to enjoin and set aside the Order. Atchison, T. & S. F. Ry. v. United States, 334 F. Supp. 651, 654 (D.Minn.1971); Frozen Food Express v. United States, 219 F. Supp. 131 (N.D.Tex.1963). Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

I. SUBSTANTIAL EVIDENCE IN THE RECORD AS A WHOLE SUPPORTS THE COMMISSION'S CONCLUSION THAT THE GRANTING OF THE APPLICATIONS IS REQUIRED BY THE PUBLIC CONVENIENCE AND NECESSITY

■ Plaintiffs broadly contend that the Commission's finding of public convenience and necessity is arbitrary, capricious, an abuse of discretion and entirely erroneous because not supported by substantial evidence, not supported by findings and conclusions of appropriate definiteness, and because the Commission failed to find that the existing carrier service should be afforded the opportunity to provide the proposed service. Viewing the record as a whole, this Court finds that the Commission's decision has a rational basis and is supported by substantial evidence. Missouri Beef's verified statement which was in evidence before the Commission clearly reveals

that because of the recent boom in the meat packing industry in the Texas Panhandle, and because there are not enough trucks presently terminating in the area, motor carrier service in Plainview is inadequate. Supporting this evidence was an attached list of turndown records at Missouri Beef's nearby Friona plant, which included specific service failures of Frozen Food Express. (Verified Statement of N. L. Cummins—Exhibits G, H). Based upon this evidence, and the limited territorial and commodity authority of the protestants, the Commission found that none of the protestants could provide Missouri Beef with the service it requires and that a need for additional service from its facilities at Plainview was shown. This evidence is sufficient to justify the Commission's conclusion that additional motor carrier service is needed. Indeed, the Commission specifically found that Missouri Beef "will have sufficient volume from Plainview to warrant the granting of all the applications herein and still be able to utilize the services of the protestants [now plaintiffs] within the scope of their authorities." (Report of Review Board 3, p. 13) This finding is well within the Commission's discretion. See United States v. Detroit & Cleveland Nav. Co., 326 U.S. 236, 240–41, 66 S.Ct. 75, 90 L.Ed. 38 (1945).

■ Plaintiffs' assertion that the Commission erred in failing to allow plaintiffs to show they could provide adequate service is without merit. The Commission does not have to give existing carriers this opportunity. United States v. Dixie Highway Express, Inc., 389 U.S. 409, 411, 88 S.Ct. 539, 19 L.Ed. 2d 639 (1967) (per curiam). Furthermore, the Commission is not obligated to make a finding that the existing service is inadequate in order to grant the extensions. Texas Mexican Ry. v. United States, 250 F.Supp. 946, 950 (S.D.Tex. 1966).

4. Substantial evidence is "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." Illinois Cent. R.R. v. Norfolk & W. R.R., *supra*, 385 U.S. at 66, 87 S.Ct. 255 at 260.

■ Plaintiffs also attack the Commission's grant on grounds that its findings are not of appropriate definiteness. In United States v. Pierce Auto Freight Lines, Inc., *supra,* 327 U.S. at 529, 66 S.Ct. at 695, the Supreme Court stated: "[G]iven that the report contains all the essential findings required . . . the Commission is not compelled to annotate to each finding the evidence supporting it."

The findings of the Commission expressly stated, concerning each application, that the "present and future public convenience and necessity require" the extended operations. This is all the Act requires. "[T]here can be no presumption that the Commission disregarded the public or any other interest . . . ." United States v. Pierce, *supra,* 327 U.S. at 531–32, 66 S.Ct. at 696; *accord,* Interstate Commerce Comm'n v. Jersey City, 322 U.S. 503, 512, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Braswell Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98, 102 (W.D.Tex.1967), *aff'd per curiam,* 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968).

## II. DENIAL OF ORAL HEARING FOR CROSS-EXAMINATION WAS PROPER

■ Plaintiffs argue that the action of the Commission in refusing to grant the request for oral hearing to cross-examine the witnesses for whom verified statements were presented pursuant to 49 C.F.R. § 1100.53 (1970) was arbitrary, capricious, an abuse of discretion and thus a violation of due process. No authority is cited in support of this assertion. As reason for its denial, the Commission stated that no material issues of fact were presented by the protestants to warrant an oral hearing for cross-examination, and that no reasons were given why protestants could not present affirmative evidence and rebut applicants' and shipper's evidence in their own verified statements.

■ When considering this issue, the Courts, as well as the Commission itself, have held that there is no absolute right to an oral hearing, but that it is discretionary with the Commission. Howard Hall Co. v. United States, 332 F.Supp. 1076, 1080 (N.D.Ala.1971); Allied Van Lines Co. v. United States, 303 F.Supp. 742, 747 (C.D.Cal.1969); Kingpak, Inc., Investigation of Operations, 103 M.C.C. 319, 344 (1966). The Commission's Modified Procedure provides that "unless material facts are in dispute, oral hearing will not be held for the sole purpose of cross-examination." 49 C.F.R. § 1100.53 (1971).

> To grant plaintiffs' application for an order setting aside the Commission's Orders, this Court would have to find either that the Commission's modified procedure denies fundamental fairness, or that the present application of that procedure was violative of due process.

Allied Van Lines Co. v. United States, *supra,* 303 F.Supp. at 749–50.

■ The weight of authority holds that neither the Administrative Procedure Act, the Interstate Commerce Act, nor due process requires an oral hearing in this type of case and that the Commission's modified procedure is fundamentally fair. Richard Dahn, Inc. v. I. C. C., 335 F.Supp. 337, 349 (D.N.J.1971); Howard Hall Co. v. United States, *supra,* 332 F.Supp. at 1079–80; C. I. Whitten Transp. Co. v. United States, 328 F.Supp. 1120, 1123 (S.D.W.Va.1971); Allied Van Lines Co. v. United States, *supra,* 303 F.Supp. at 748; National Trailer Convoy, Inc. v. United States, 293 F.Supp. 634, 636 (N.D.Okla.1968); Lincoln Transit Co. v. United States, 256 F.Supp. 990, 993–94 (S.D.N.Y.1966); Chemical Leaman Tank Lines, Inc. v. United States, 251 F.Supp. 269, 273 (E.D. Pa.1965); Brotherhood of Locomotive Engineers v. United States, 217 F.Supp. 98 (N.D.Ohio 1963). *See* Wong Yang Sung v. McGrath, 339 U.S. 33, 50, 70 S.Ct. 445, 94 L.Ed. 616 (1950); Gardner v. United States, 239 F.2d 234, 238 (5th Cir. 1956); LaRue v. Udall, 116

U.S.App.D.C. 396, 324 F.2d 428 (1963); Theaters Serv. Co. Extension—Duluth, Ga., 113 M.C.C. 744, 746 (1971).

Nor was the present application of that procedure violative of due process. To obtain an oral hearing, a party must specify the name of any witness it wishes to testify and the subject matter of the desired cross-examination, along with any other basis of the request. 49 C.F.R. § 1100.53(a). Plaintiffs have not asserted any relevant material facts which were disputed. The only basis for the request was in the verified statement of J. B. Ham, General Traffic Manager, FFE, at p. 12:

> [W]e are asking for an oral hearing to examine the shipper's records in [regard to the supporting shipper's registering of certain complaints with the service of Frozen Food at shipper's Friona plant] and to test the witnesses' knowledge of the facts surrounding the situation.

Plaintiffs were confronted with affidavits of the supporting shipper who had experienced inadequate service from plaintiffs, statements of other carriers citing need for increased authorization, and statistics in support thereof. Plaintiffs evidently made no attempt to utilize the Commission's discovery procedure (49 C.F.R. § 1100.56–.57), by seeking to take depositions of, or present interrogatories to, the affiants. These discovery procedures obviate the need for confrontation and cross-examination of witnesses and the alleged necessity for an oral hearing. See Ashworth Transfer, Inc. v. United States, 315 F.Supp. 199, 202–03 (D.Utah 1970); Howard Hall Co. v. United States, supra, 332 F.Supp. at 1080 n. 17; Allied Van Lines Co. v.

United States, supra, 303 F.Supp. at 749. Plaintiffs had an opportunity to offer rebuttal evidence. Nevertheless, they merely demanded the right to cross-examine every affiant without particularizing the alleged defects in each complaining affidavit. The Commission properly denied an oral hearing.

III. THE COMMISSION WAS WITHIN ITS DISCRETION IN REFUSING TO IMPOSE AN "ORIGINATING AT" RESTRICTION UPON APPLICANTS' AUTHORITY

Plaintiffs allege that the Commission acted "arbitrarily, capriciously, and abused its discretion" in failing to place a restriction on the Querner and Haynes grants of authority to "traffic originating at the plant site and storage facilities of Missouri Beef at Plainview, Texas." Plaintiffs claim that without such a restriction, plaintiffs' traffic would be subject to diversion through "tacking" and "interlining." [5] The Commission, in refusing to impose the restriction, stated:

> [T]he evidence does not demonstrate that an unrestricted grant of authority would allow applicants to divert any substantial amount of traffic from existing carriers. Also, the evidence indicates that meat shippers do not prefer interline or interchange service. The proposed restriction is unacceptable and will not be imposed. Fox-Smythe Transp. Co. Extension-Oklahoma, 106 M.C.C. 1, 15. However, the plant site limitation requested in most of the applications will be imposed as sought.

The Fox-Smythe case is the controlling authority on the Commis-

5. " 'Tacking' is the 'joining of separate grants of authority by routing shipments through a point common to the separate authorities so as to provide a through carrier service between the territory served under one authority and that served under another and separate authority.' Chemical Leaman Tank Lines, Inc. v. United States, 298 F. Supp. 1269 (D.Del.1969). 'Interlining' or 'interchanging' is the transfer of goods between carriers for the through movement of freight from origin to destination."
Braswell Motor Freight, Inc. v. United States, 336 F.Supp. 709, 711 n. 1 (C.D. Cal.1971).

sion's policy regarding the imposition of restrictions. Before plant site, no-tacking and interlining restrictions will be imposed, the protesting carrier must show that it will be materially and adversely affected if no restriction is granted. *Fox-Smythe, supra,* 106 M.C.C. at 17-19. The plaintiffs have not met their burden in this case. The evidence of record does not indicate that any substantial amount of traffic will be diverted from plaintiffs. "A mere showing that tacking possibilities exist and that an applicant may avail itself of them is not a sufficient showing by a protestant to warrant a restriction against tacking." Howard Hall Co. v. United States, 332 F.Supp. 1076, 1082 (N.D.Ala.1971); *accord,* Ashworth Transfer, Inc. v. United States, 315 F.Supp. 199, 201–02 (D. Utah 1970); Midwest Emery Freight System, Inc. v. United States, 293 F. Supp. 403, 407 (N.D.Ill.1967); Aero Mayflower Transit Co. v. United States, 95 F.Supp. 258 (D.Neb.1951); Tomkins Motor Lines, Inc.—Extension, Louisville, 95 M.C.C. 472, 481 (1964). Considering the wide discretion the Commission has with respect to imposing restrictions, this Court finds that the Commission did not act "arbitrarily or capriciously" in refusing to grant an "originating at" or "no-tacking" restriction in this case. *See* 49 U.S.C. § 308; Interstate Commerce Comm'n v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945).

Plaintiffs argue that the Commission's refusal to grant this restriction is inconsistent with its position in similar cases and that "if the Commission finds an 'originating at' restriction unreasonable, it should be unreasonable in all situations." This Court recently rejected a similar argument in the *Towne Services* case, *supra:*

> It is neither the duty nor the right of this court ' * * * to inquire into the soundness of the Commission's reasoning, the wisdom of its decisions, *or the consistency of its conclusion with those reached in similar cases.'* (Italics added), Georgia Public Service Commission v. United States, 283 U.S.

765, 775 [, 51 S.Ct. 619, 623, 75 L.Ed. 1397] (1931).

329 F.Supp. at 821; *accord,* Yale Transp. Corp. v. United States, 210 F. Supp. 862 (S.D.N.Y.1962), *aff'd per curiam,* 373 U.S. 540, 83 S.Ct. 1537, 10 L.Ed. 2d 687 (1963).

Finally, the fact that the Commission imposed a plant site restriction in most of the applications in effect limits the applicants' grants of authority. Before a carrier is allowed to tack and/or interline, there must be a point of service common to both authorities, the physical operation must be rendered through the common point, and the carrier must have the written consent of the plant site owner. *See* M. I. O'Boyle & Son, Inc. v. Interstate Commerce Comm'n, 92 U.S. App.D.C. 383, 206 F.2d 473 (1953). Plaintiffs in this case have not proven that Missouri Beef has given its permission to any carrier to so use its plant site. Furthermore, it is unlikely that Missouri Beef will allow the carriers to use their private property to tack and interline to transport traffic for their competitors. Thus, plaintiffs have failed to prove that it is possible or probable that their traffic will be diverted. Even if there were some evidence in the record that implementation of these unrestricted authorities might cause the plaintiffs to suffer some diversion of traffic, the Commission could still decline to impose the restriction since existing carriers are not immune from some competition.

> [N]o carrier is entitled to protection from competition in the continuance of a service that fails to meet a public need, nor, by the same token, should the public be deprived of a new and improved service because it may divert some traffic from other carriers.

Schaffer Transp. Co. v. United States, 355 U.S. 83, 91, 78 S.Ct. 173, 178, 2 L.Ed.2d 117 (1957); *accord,* Atlanta-New Orleans Motor Freight v. United States, 197 F.Supp. 364, 370 (N.D.Ga. 1961); Superior Trucking Co. v. United States, 306 F.Supp. 872, 878–79 (N.D. Ga.1969).

Pursuant to the foregoing, viewing the record as a whole, this Court finds that the Commission's finding that the applicants' proposed service is required by public convenience and necessity is lawful and supported by substantial evidence; that the Commission acted within its discretion in concluding that no "originating at" restriction should be imposed upon the certificates granted to applicants; and that the Commission properly concluded that no material issues of fact requiring an oral hearing for cross-examination were presented. Due process was accorded both protestants and applicants.

Accordingly, the actions of the Commission are in all things affirmed and all relief sought by plaintiffs is denied, and it is so ordered.

Appendix
United States District Court
Western District of Texas
San Antonio Division

Frozen Food Express, Inc., and
Zero Refrigerated Lines, Inc.

v.

United States of America and SA 71 CA 337
Interstate Commerce Commission

and

Querner Truck Lines, Inc., and
Lone Star Carriers, Inc.,
 Intervenors

ORDER DENYING TEMPORARY
RESTRAINING ORDER

On this the 30th day of November, 1971, came on for consideration plaintiffs' prayer for a temporary restraining order, pursuant to 28 U.S.C. § 2324, concerning orders of defendant here attacked and the Court, having considered plaintiffs' Original Complaint and its appendices, plaintiffs' Memorandum in support of their application, Reply of intervenors, and defendant Interstate Commerce Commission's Memorandum in opposition, cannot find (a) a strong likelihood that plaintiffs will prevail on the merits; (b) that without a stay plaintiffs will suffer irreparable injury; (c) that a stay would cause no substantial harm to other interested persons; or (d) that a stay would not harm the public interest. To the contrary, the Court finds that the only injury plaintiffs might suffer by a denial of a stay would be increased competition, which in the Interstate Commerce Commission's opinion, presumptively valid, is in the public interest. Such injury, if any, cannot be said to be irreparable. On the other hand, a stay would cause substantial harm to intervenors, supporting shipper, and the public. See Braswell Motor Freight, Inc. v. United States, 297 F.Supp. 215 (S.D.Miss.1969).

Plaintiffs' application for temporary restraining order must therefore be, and the same is hereby, in all things, denied, and it is so ordered.

Entered this 30th day of November, 1971.

(s) DORWIN W. SUTTLE
United States District Judge